**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SCOTT MCMAHON, | ) | |
| on behalf of plaintiff and the classes defined | ) | |
| herein, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 12 C 1410 |
| | ) | Judge Kocoras |
| LVNV FUNDING, LLC, | ) | |
| RESURGENT CAPITAL SERVICES, L.P.; | ) | |
| ALEGIS GROUP, LLC; | ) | |
| and TATE & KIRLIN ASSOCIATES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

**I.      FACTS**

This action concerns attempts by defendants to collect an allegedly unpaid residential gas bill that may have been incurred 15 years ago. (Cmplt., ¶34) The statute of limitations on a gas bill in Illinois (and virtually everywhere else) is 4 years. (Cmplt., ¶35) Uniform Commercial Code, 810 ILCS 5/2-725.

Defendants regularly attempt to collect gas bills and credit card debts on which the statute of limitations has expired. (Cmplt., ¶39) Defendants dun consumers for time-barred debts without disclosing the fact that the debts are time-barred and without disclosing the dates of the transactions giving rise to the debts. (Cmplt., ¶¶44-45)

On December 19, 2011, defendant Tate & Kirlin sent plaintiff an initial demand letter (Cmplt., Ex. A) in which it "offer[ed] to settle your account in full for $233.99. This represents a savings of 60% off your balance." (Cmplt., ¶¶29-31) The letter did not state when the debt was incurred or that it was time-barred.

Plaintiff disputed the debt (Cmplt., Ex. B), indicating that he might be willing to pay it if it were in fact his.

1

In response, plaintiff received a letter from defendant Resurgent Capital Services (Cmplt., Ex. C) stating that the debt was owned by defendant LVNV Funding, that it was sold by Nicor Gas on or about September 23, 2011, and that the account balance is $584.98. The response fails to state when the debt supposedly arose. Again, it does not disclose that the statute of limitations had long since expired or that making a small payment would revive the debt in Illinois. In addition, its statement of the date of the recent purchase of the debt implies that the debt is recent.

## II. THE FEDERAL TRADE COMMISSION HAS DETERMINED THAT IT IS A DECEPTIVE PRACTICE TO DUN CONSUMERS FOR TIME-BARRED DEBTS WITHOUT DISCLOSURE OF THAT FACT

In *United States of America (For the Federal Trade Commission) v. Asset Acceptance, LLC*, Case No. 8:12-cv-182-T-27EAJ (M.D.Fla.) (Complaint attached as Appendix A), the FTC sued a major debt buyer, alleging that Asset Acceptance regularly collects debts that are past the statute of limitations. (Appendix A, ¶30) The FTC alleged (Appendix A, ¶34) that "Many consumers do not know if the accounts that Asset is attempting to collect are beyond the statute of limitations. Consumers also do not realize that making a partial payment on a debt, or making a written promise to pay will, in many instances, revive the debt. When Asset contacts consumers to collect on a debt, many consumers believe they could experience serious negative consequences, including being sued, if they fail to pay the debt. Similarly, many consumers believe that making a partial payment on a debt in response to Asset's collection efforts is a positive action that can avert the negative consequences of nonpayment. If consumers knew, in connection with a past-statute debt, that Asset had no legal means to enforce collection of the debt, or understood that making a partial payment or a written to promise to pay would revive it, some consumers would likely choose not to make a payment or a written promise to pay."

The FTC alleged that by dunning consumers on time-barred debts without disclosure of the fact, Asset Acceptance violated both §5(a) of the Federal Trade Commission

Act, 15 U.S.C. §45(a) ("FTC Act")[1] (Appendix A, ¶¶56-58), and the Fair Debt Collection

Practices Act, 15 U.S.C. §§1692e, 1692e(2)(A), and 1692e(10) ("FDCPA")[2] (Appendix A, ¶¶81-

83). Both 15 U.S.C. §45(a) and 15 U.S.C. §1692e prohibit deceptive acts and practices. Indeed,

§1692e represents a codification and expansion of precedent relating to FTC actions with respect

to debt collection practices under §45(a). *Jeter v. Credit Bureau*, 760 F.2d 1168 (11th Cir. 1985).

      The filing of the complaint was a decision of the Federal Trade Commissioners.

(Appendix B, p. 2) The FTC was the enforcement agency who is entrusted with the task of

promoting the efficient functioning of the marketplace by protecting consumers from unfair or

deceptive practices. The Commission enforced the FTC Act, which prohibits unfair methods of

competition and unfair or deceptive acts and practices in or affecting trade or commerce. 15

U.S.C. § 45(a). It also enforced the FDCPA, 15 U.S.C. §§1692-1696. The responsibility has

now been transferred to the Consumer Financial Protection Bureau.

      The same day as the complaint was filed, Asset Acceptance consented to a

judgment (Appendix C) in which it was required to disclose (¶IV.A-D), "for any debt that the

---

[1] 15 U.S.C. §45(a) provides: "**(1) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful.**"

[2] Section 1692e provides:

> **§ 1692e.     False or misleading representations [Section 807 of P.L.]**
>
>     **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**
>
>     **(2)    The false representation of--**
>
>         **(A)    the character, amount, or legal status of any debt; . . .**
>
>     **(10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

Defendant knows or should know may be beyond the applicable statute of limitations," that "The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it." The judgment also required Asset to pay $2.5 million. The Commissioners of the FTC approved the Consent Decree. (Appendix B, p.2)

The FTC also issued a news release setting forth its position concerning collection of time-barred debts (Appendix B, p. 1). The release stated:

> "Most consumers do not know their legal rights with respect to collection of old debts past the statute of limitations," said David Vladeck, Director of the FTC's Bureau of Consumer Protection. "When a collector tells a consumer that she owes money and demands payment, it may create the misleading impression that the collector can sue the consumer in court to collect that debt. This FTC settlement signals that, even with old debt, the prohibitions against deceptive and unfair collection methods apply."

Finally, the FTC issued a notice to industry (Appendix D) in which it described Asset's violation as having "failed to disclose that debts were too old to be legally enforceable or that a partial payment would restart the clock". While, as defendants point out (Def.Mem., p. 8), there were "numerous disputed claims" made by the FTC, the complaint and judgment specifically addressed dunning on time-barred debts without disclosure of that fact.

The FTC's action in the *Asset Acceptance* case followed five years of investigation and study of debt collection abuses generally and the collection of time-barred debts in particular. In late 2007, the FTC conducted a series of public workshops to evaluate the need for reform in the debt collection system. Its subsequent report, *Collecting Consumer Debts: The Challenges of Change* (2009),[3] identified the advent and growth of the debt buying industry as the most significant change in debt collection practices since the enactment of the FDCPA more than 30 years ago, and discussed some of the consumer challenges raised by this industry change. The report noted (pp. 3-4) that large amounts of debts are sold to debt buyers, such as the defendants herein, who generally pay 5% or less of the amount allegedly owed.

---

[3] Available at www.ftc.gov/bcp/workshops/debtcollection/dcwr.pdf.

The most significant change in the debt collection business in recent years has been the advent and growth of debt buying. Some companies simply buy debt and seek to recover on it. In addition to these companies, debt buyers also include collection law firms, contingency collection agencies, and investors who purchase and resell portfolios of delinquent debt. Debt buyers purchase charged-off debt from credit card issuers, retail merchants, telecommunications providers, utilities, and other credit providers. Purchased debt typically is classified by its age and the number of debt collectors who have attempted to collect it before it was sold. . . . Debt buying increased substantially over the decade between 1997 and 2007, and industry analysts estimate that debt buying will grow at an 11% rate over the next five years and reach annual revenues of $6.2 billion by 2011." (Id., 13-14)

Moreover, debt buyers receive only minimal information about the debts they claim to purchase: "A leading association of debt buyers, DBA International ('DBA'), acknowledged that it is common for a debt buyer to receive only a computerized summary of the creditor's business records when it purchases a portfolio . . . ." (Id., 22).

This practice of acquiring debts without any evidence of them directly impinges on the interest served by statutes of limitation. "By requiring that owners of debt file suit relatively close in time to the delinquency, statutes of limitations help ensure that courts have necessary evidence available to resolve disputes, and thus assist consumers in defending themselves." (Id., 62-63) The FTC noted that ". . . .there is a consensus that suing or threatening to sue to collect time-barred debt is unlawful and unethical for debt collectors. . . ." (p. 64), but noted that further measures may be necessary.

The FTC concluded that it needed more information before adopting a position. To obtain more information, during the latter part of 2009 the FTC convened public roundtables in Chicago, San Francisco, and Washington, D.C. These events brought together representatives of the debt collection industry, consumer advocates, private attorneys, academics, government officials, arbitration providers, judges, and others specifically to discuss issues related to debt collection litigation. To supplement the information gleaned from the discussions at these roundtables, the Commission also solicited and received public comments. The Commission's 2010 Debt Collection and Arbitration Roundtables Report, *Repairing a Broken System:*

5

*Protecting Consumers in Debt Collection Litigation and Arbitration* (2010),[4] examined the deficiencies in debt collection lawsuits at the filing and default stages, particularly in actions brought by debt buyers.

The 2010 Report again noted "that the FDCPA bars actual or threatened suit to collect on time-barred debts." (Report, p. 23) However, the FTC went further and concluded (pp. 26-28) that other attempts to collect time-barred debt were misleading:

> The Commission takes no position on whether the FDCPA should be amended to preclude collectors from collecting debt that they know or should know is time-barred. Nevertheless, because most consumers do not know or understand their legal rights with respect to the collection of time-barred debt, the Commission believes that in many circumstances such a collection attempt may create a misleading impression that the collector can sue the consumer in court to collect the debt, in violation of Section 5 of the FTC Act and Section 807 of the FDCPA. To avoid creating this misleading impression, collectors would need to disclose clearly and prominently to consumers before seeking payment on such time-barred debt that, because of the passage of time, they can no longer sue in court to collect the debt or otherwise compel payment.

> The second issue related to collecting on time-barred debt roundtable participants addressed was the "reviving" of such debt. In many states, making a payment on a debt after it has gone into default triggers the start of a new statute of limitations period for the entire debt, even if the original statute of limitations period has already expired. . . . Debt collectors generally do not disclose to consumers that making any payment on a time-barred debt revives the collector's ability to sue to collect on the entire debt. . . .

> In states where laws continue to provide that a partial payment on a time-barred debt revives it, the Commission believes that in many circumstances a collector's attempt to collect a debt that it knows or should know is time-barred may create a misleading impression as to the consequences of making such a payment, in violation of Section 5 of the FTC Act and Section 807 of the FDCPA. To avoid creating a misleading impression, collectors would need to disclose clearly and prominently to consumers prior to requesting or accepting such payments that (1) the collector cannot sue to collect the debt and (2) providing a partial payment would revive the collector's ability to sue to collect the balance.

Among the reasons cited by the FTC for adopting this position were that debt buyers in particular frequently threatened or filed suits to collect time-barred debt notwithstanding the existing prohibition on doing so, apparently with the expectation that the consumers would default and allow judgments to be entered against them. (Report, pp. 29-30).

---

[4] Available at http://www.ftc.gov/os/2010/07/debtcollectionreport.pdf.

Thus, the FTC's position, adopted in the filing and settling of the *Asset Acceptance* litigation, represents a considered determination of what is "deceptive", arrived at after lengthy study in the Commission's area of expertise. As discussed below, it is both entitled to deference and persuasive, and should be followed by this Court.

## III. THE COURT SHOULD FOLLOW THE FTC'S DETERMINATION OF WHAT CONSTITUTES A DECEPTIVE PRACTICE

Administrative agencies make law through adjudication as well as by rulemaking. *SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947). "And the choice made between proceeding by general rule or by individual, *ad hoc* litigation is one that lies primarily in the informed discretion of the administrative agency." *Id.*

The decision of the FTC to file a complaint represents its construction of the relevant statutes, in this case both the FTC Act and the FDCPA, even if the proceeding is resolved by a consent decree. In *FTC v. Mandel Bros.*, 359 U.S. 385, 391 (1959), the FTC had determined that receipts issued by retailers to consumers purchasing fur were "invoices" within the meaning of the Fur Products Labeling Act. The Supreme Court held that "The inclusion of retail sales slips in invoices has been the consistent administrative construction of the Act. This contemporaneous construction is entitled to great weight even though it was applied in cases settled by consent rather than in litigation."

Similarly, in *Ramson v. Layne*, 668 F.Supp. 1162, 1168-69 (N.D.Ill. 1987) (Shadur, J.), the position taken by the FTC in filing complaints and obtaining consent orders against endorsers appearing in advertisements was treated as the FTC's position on the legal issue: "Although none of those cases represents an adjudicated finding of liability or enunciates a formal rule for when an endorser may be held liable under the Federal [Trade Commission] Act, they do make one thing plain: In FTC's view endorsers may, under certain circumstances, violate the Federal Act."

In *In re TJX Companies Retail Security Breach Litigation*, 564 F.3d 489, 496-97 (1st Cir. 2009), the court found relevant "the host of FTC complaints and consent decrees

7

condemning as 'unfair conduct' specific behavior similar to that charged by plaintiffs," citing *Schubach v. Household Finance Corp.*, 375 Mass. 133, 135, 376 N.E.2d 140 (1978), *PMP Assocs., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596, 321 N.E.2d 915 (1975), and *Commonwealth v. Fremont Inv. & Loan*, 452 Mass. 733, 747-48, 897 N.E.2d 548 (2008).

Similarly, in *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 529 (Alaska 1980), the court held: "[I]t is beyond dispute that the Federal Trade Commission has asserted its jurisdiction over unfair or deceptive acts and practices of debt collection agencies, by administrative rule-making and administrative adjudication. Contrary to O'Neill's assertion, adjudications which are resolved by consent decree constitute an administrative interpretation of the Federal Trade Commission Act which have clear precedential value."

Defendants rely on several cases, none of which involved a situation where a government agency charged with enforcing a law adopted a position as to the meaning of that law in the course of filing an enforcement action and accepting a consent decree. *Dunn v. Carey*, 808 F.2d 555, 559 (7th Cir. 1986), involved an issue as to whether a governmental defendant that had entered into a consent decree was legally authorized to do so. *Firefighters Local 93 v. City of Cleveland*, 478 U.S. 501, 529 (1986), was a civil rights action brought by an organization of minority firefighters against the City, and the issue was whether a consent decree was reasonable with respect to the rights of nonminority firefighters. *United States v. City of Chicago*, 978 F.2d 325 (7th Cir. 1992), involved an issue concerning who was to pay for remedial action required under a consent decree which did not specifically address the matter. None of these cases address the issue presented in this case, or purport to overrule *FTC. v. Mandel Bros.*, 359 U.S. 385, 391 (1959).

The FTC's interpretation of what is "deceptive" in the area of debt collection is entitled to deference by the courts. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). The FTC has been given authority to enforce both the FTC Act and the FDCPA, both of which condemn "unfair and deceptive practices". "Where . . . Congress

8

enacts an ambiguous provision within a statute entrusted to the agency's expertise, it has 'implicitly delegated to the agency the power to fill those gaps.'" *Trans Union LLC v. FTC*, 295 F.3d 42, 50 (D.C.Cir. 2002) citing *County of Los Angeles v. Shalala*, 192 F.3d 1005 (D.C.Cir. 1999)(quoting *National Fuel Gas Supply Corp. v. FERC*, 811 F.2d 1563, 1569 (D.C.Cir. 1987). The FTC has been empowered to determine, based upon its expertise, what practices are unfair or deceptive.

Here the FTC's interpretation of unfairness was subjected to a deliberative process, including notice and an opportunity for comment, through the public workshops and 2010 Report described above, making its determination equivalent to a regulation issued in the context of Congressional delegation of regulatory authority. The FTC does not have the authority to issue regulations "with respect to the collection of debts by debt collectors." 15 U.S.C. § 1692l(d).

*Chevron* deference extends to interpretations reached in adjudications, *Trans Union Corp. v. FTC*, 81 F.3d 228, 230 (D.C.Cir.1995) citing *Midtec Paper Corp. v. United States*, 857 F.2d 1487, 1497 (D.C.Cir.1988). Deference is appropriate even to interpretations arising pursuant to consent decrees. *Commonwealth v. Fremont Investment & Loan*, 452 Mass. 733, 897 N.E.2d 548 (2008)(accorded deference to concepts of unfairness indicated by an FDIC consent decree governing mortgage lending standards); *State of Alaska v. O'Neill Investigations*, 609 P.2d 520 (1980) (gave deference to FTC administrative interpretations of state unfair and deceptive practices act derived from consent decrees).

An agency's interpretation of its governing statutes – here, the FTC Act and FDCPA – is followed by the courts as long as it is reasonable, even if a different view would also be reasonable. If a statute is ambiguous or silent, the court must defer to any "permissible construction of the statute" by the agency. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984). The court may reverse the agency's decision only if it is "arbitrary, capricious, or manifestly contrary to the statute." *Medical Ctr. Pharm. v. Mukasey*, 536

F.3d 383, 393 (5th Cir. 2008). "If the decision is based on a reasonable interpretation of the statute, we defer to the agency's construction." *Tex. Coalition of Cities for Utility Issues v. F.C.C.*, 324 F.3d 802, 807 (5th Cir. 2003) (citing *Chevron*, 467 U.S. at 844) ("[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.")

Finally, even if the FTC's opinion as expressed by the *Asset* complaint and consent decree are not entitled to *Chevron* deference, they are entitled to respect to the extent they have the power to persuade. *Skidmore v. Swift & Co*, 323 U.S.134, 140 (1944); *Christensen v. Harris Cnty*., 529 U.S. 576, 587 (2000).

## IV.      THE FTC'S POSITION IS REASONABLE AND PERSUASIVE

In the present case, it is reasonable for the FTC to conclude that the word "deceptive" in the FTC Act and FDCPA covers any attempt to collect a debt which is no longer enforceable as a result of the expiration of applicable limitations periods, even if the attempt does not involve an explicit threat of suit. Alternatively, *Skidmore* deference should be afforded. The FTC's extensive factual review of the unfair impact of the methods used by debt collectors to collect time-barred debts is persuasive.

In this regard, the FTC has not only extensive experience in investigating and prosecuting debt collectors under both the FTC Act and the FDCPA, but has recently conducted extensive studies of debt collection practices. The FTC receives thousands of complaints regarding debt collection practices each year. *FTC Annual Report 2010: Fair Debt Collection Practices Act* (2010) (Appendix E, p. 3). It has filed numerous law enforcement actions against individuals and companies that engaged in deceptive debt collection practices under both statutes. In March 2011, the Commission announced a settlement agreement with collector West Asset Management, Inc., resulting in a $2.8 million civil penalty. *United States v. West Asset Mgmt., Inc.*, No. 1:11-cv-0746 (N.D. Ga. Mar. 14, 2011). In October 2010, the FTC reached a settlement agreement with Allied Interstate, Inc., one of the nation's largest debt collectors, resulting in a

10

$1.75 million civil penalty. *United States v. Allied Interstate, Inc.*, No. 10-cv-04295 (D. Minn. Oct. 22, 2010). In March 2010, the FTC announced a settlement agreement with collector Credit Bureau Collection Services and two of its officers, resulting in a civil penalty of more than $1 million. *United States v. Credit Bureau Collections Servs., et al.*, No.2:10-cv-169 (S.D. Ohio Mar. 31, 2010).

In addition to litigation, the FTC convened conferences and workshops that examined changes in the debt collection landscape. Thus, the FTC has considerable experience in issues related to debt collection.

Furthermore, other states and agencies have expressed agreement with the FTC. North Carolina Gen. Stat. §75-55 (1994) (unconscionable to collect any debt by seeking or obtaining an acknowledgment of any debt barred by the statute of limitations); 940 Code Mass. Reg. 7.00 (2012) (creditors prohibited from attempting to collect a debt that is time-barred unless they make certain disclosures); New Mexico Ann. Code §12.2.12.9 (2012) (unfair or deceptive trade practice for any debt collector to attempt to collect any payment that the debt collector knows or has reason to know is a time-barred debt without disclosing that the debt is time-barred and the consequences of that fact and of payment); 6 Rules of the City of New York City 2-191 (2010) (debt collector must advise debtor if debt is time-barred).

In this case, defendants' dunning letters illustrate the wisdom of the FTC's interpretation. Cmplt., Ex. A offers a "settlement." An offer of a "settlement" implies a colorable legal obligation. (Cmplt., ¶48) *Collection Prof'ls v. Logan*, 296 Ill. App. 3d 959, 695 N.E.2d 1344 (3rd Dist. 1998). When plaintiff asked for information about the alleged debt (Cmplt., Ex. B), instead of providing a straightforward answer revealing the address and date of gas service, defendants responded with an evasive statement that they had recently acquired the debt from Nicor. An unsophisticated consumer who had recently obtained gas service could readily conclude this was a recent bill that he had not received or had forgotten about. The entire course of conduct was contrived to imply that a legal obligation continued to exist without using the

words "lawsuit" or "litigation."

The FTC is familiar with the use of language to convey meanings to the consuming public, had given the subject extensive study, and was entitled to conclude that it was necessary to move the line and require a clear disclosure that a debt is barred by limitations rather than attempts to draw fine distinctions between overt or implicit threats of litigation and subtle suggestions that a claim is legally enforceable when it is not. Courts have wrestled with the question of whether, in connection with the collection of time-barred debts, various communications constituted "threats of litigation'. *See, e.g.*, *Perretta v. Capital Acquisitions & Management Co.*, 2003 Dist. LEXIS 10070 (N.D.Cal. May 5, 2003)(statement that if debtor would not "work with" debt collector, "steps would be taken" constituted a threat of litigation); *Abels v. JBC Legal Group, PC*, 428 F.Supp. 2d 1023 (N.D.Cal. 2005)(mention of penalty provisions in letter on attorney letterhead not an implicit threat of litigation). The FTC was not obligated to allow debt buyers to acquire ancient debts for a penny on the dollar and then play games, attempting to sail as close to the line as possible, knowing that they would make more money collecting the debts than paying in damages or fines.

## V.   DEFENDANTS' RELIANCE ON PRE-ASSET ACCEPTANCE CASES IS MISPLACED

Defendants cite some eight cases[5], all predating the FTC's action against Asset Acceptance, for the proposition that "merely sending a letter seeking collection of a time-barred debt" does not violate the FDCPA unless they "implicitly or explicitly threaten litigation." (Def. Mem., pp. 3-4). Plaintiff does not dispute that this was the view of most courts before the FTC acted. Indeed, the FTC noted that "there is a consensus that suing or threatening to sue to collect

---

[5]*Murray v. CCB Credit Services, Inc.*, 2004 WL 2943656, *2 (N.D.Ill. 2004); *Walker v. Cash Flow Consultants, Inc.*, 200 F.R.D. 613, 616 (N.D.Ill. 200); *Huertas v. Galaxy Asset Manangement*, 641 F. 3d 28, 33 (3rd Cir. 2011); *Freyermuth v. Credit Bureau Services, Inc.*, 248 F.3d 767, 771(8th Cir. 2001); *Wallace v. Capital One Bank*, 168 F. Supp.2d 526,529 (D.Md. 2001); *Johnson v. Capital One Bank*, No. Civ.A SA00CA315EP, 2000 WL 1279661, *2 (W.D.Tex.2000): *Aronson v. Commercial Financial Services, Inc.*, No. Civ. A. 96-2113, 1997 WL 1038818, *3 (W.D.Pa. 1997); *Schaefer v. ARM Receivable Managment, Inc.*, 09-11666-DJC, 2011 WL 2847768 (D.Mass. 2011).

time-barred debt is unlawful and unethical for debt collectors" (2009 Report, p. 64). The question is not how far courts were willing to go in the absence of action by the FTC, but whether the FTC was justified in moving the line.

The FTC has authority to proceed to overrule its own prior positions. *FTC v. IFC Credit Corp.*, 543 F. Supp. 2d 925, 940 (N.D.Ill. 2008). This is especially appropriate when considering the concept of unfairness:

> It cannot be too often recalled that the FTC is charged with giving meaning to "the elusive, but congressionally mandated standard of fairness," *Sperry & Hutchinson Co.*, 405 U.S. at 244, which by its very nature, is a "a flexible concept with evolving content." *FTC v. Bunte Bros., Inc.*, 312 U.S. 349, 353, 61 S. Ct. 580, 85 L. Ed. 881, 32 F.T.C. 1848 (1941). *Cf., Herring v. New York*, 422 U.S. 853, 866-867, 95 S. Ct. 2550, 45 L. Ed. 2d 593 (1975)("'fairness is a relative not an absolute concept'" dependent on circumstances). To implement "[a] statute expressive of such large public policy as that on which the [Federal Trade Commission] is based," *Phelps Dodge Co. v. NLRB*, 313 U.S. 177, 194, 61 S. Ct. 845, 85 L. Ed. 1271 (1941), Congress has given the FTC regulatory flexibility. Thus, rather than reflecting vacillation, the FTC's prior use of a restrictive definition reflects an exercise of that flexibility in response to perceived evils. In any event, "[t]he fact that the agency has from time to time changed its interpretation of [a] term…does not…. lead us to conclude that no deference should [**37] be accorded the agency's interpretation of the statute." *Chevron U.S.A., Inc.*, 467 U.S. at 863. *Id.*

Certainly the FTC has the authority to change a position with respect to legal opinions.

When an agency which has such expertise studies the matter and expresses its considered view, courts should follow it. As the Seventh Circuit has pointed out, *Johnson v. Revenue Management Corp.*, 169 F.3d 1057, 1060 (7th Cir.1999), federal judges are not experts on the behavior of unsophisticated consumers. "[W]hat seems pellucid to a judge, a legally sophisticated reader, may be opaque to someone whose formal education ended after sixth grade."

Defendants assert that "When the language of a statute is plain, courts must enforce that statute according to its terms." (Def.Mem., p. 6) However, the meaning of the word "deceptive" in the FTC Act and FDCPA, as used to describe the impact of language and conduct on unsophisticated consumers and debtors, is anything but "plain." On the contrary, the Supreme Court has pointed out "the generality of these standards of illegality" and the need for them "'to be defined with particularity by the myriad of cases from the field of business.'" *FTC v. Colgate-*

*Palmolive Co.*, 380 U.S. 374, 384-85 (1965). "This statutory scheme necessarily gives the Commission an influential role in interpreting §5 and in applying it to the facts of particular cases arising out of unprecedented situations. Moreover, as an administrative agency which deals continually with cases in the area, the Commission is often in a better position than are courts to determine when a practice is 'deceptive' within the meaning of the Act. This Court has frequently stated that the Commission's judgment is to be given great weight by reviewing courts. This admonition is especially true with respect to allegedly deceptive advertising since the finding of a §5 violation in this field rests so heavily on inference and pragmatic judgment. . . ." *Id.*, 380 U.S. at 385.

In arguing that the Asset Consent Decree has nothing to do with the defendants here (Def.Mem., p.8), defendants are saying that Asset is entitled to less favorable treatment than any other debt collector of time-barred debts. The FTC's notice to the Industry (Appendix D) leaves no doubt that the intent of the FTC is that all of the industry conform to the practices enforced by the Asset Consent Decree.

Defendants also assert that the FTC's conclusion that affirmative disclosures are necessary to avoid consumer deception somehow amounts to "read[ing] language into the [FDCPA] that is not there." (Def.Mem., p. 6) However, the FTC's position reflects a recognition that the practice of enforcing ancient debts is increasing. The unfairness of the techniques utilized by the debt buyers to enforce time-barred debt is amplified by the very reasons that statutes of limitations were put into place. Liability for old debt cannot be proven by the collector nor can claims be defended by the putative debtors. Documents are destroyed; memories fade. The debt collector methods barred by the FTC's complaint and consent decree represent reasonable limitations on the collection of time-barred debt.

The right of the FTC to impose disclosure requirements when deemed necessary to prevent or remedy deception is beyond question, even though not explicitly provided for by the FTC Act and most other statutes the FTC enforces. *Warner-Lambert Co. v. FTC*, 183 U.S. App.

14

D.C. 230, 562 F.2d 749, 756 (D.C. Cir. 1977) (corrective advertising designed to correct misinformation give to past buyers); *Grolier, Inc. v. FTC*, 699 F.2d 983 (9th Cir. 1983) (mandatory disclosures to prospective book purchasers); *Encyclopaedia Britannica, Inc. v. FTC*, 605 F.2d 964 (7th Cir. 1979) (same).

VI.    **CONCLUSION**

The FTC has determined that it is "deceptive" for a debt collector to request payment of time-barred debts without disclosure of that fact.   The FTC's conclusion was justified and is entitled to deference by this Court.  Defendants persisted in ignoring the FTC's 2009 warning, and thus violated the FDCPA.

Respectfully submitted,

s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
        & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

T:\26519\Pleading\Plaintiff's Response to motion to dismiss_Pleading.wpd

## CERTIFICATE OF SERVICE

I, Daniel A. Edelman, hereby certify that on May 18, 2012, a true and accurate copy of the foregoing document was filed via the Court's CM/ECF system and notification of such filing was sent to the following parties:

David M. Schultz
dschultz@hinshawlaw.com

Nabil G. Foster
nfoster@hinshawlaw.com

s/Daniel A. Edelman
Daniel A. Edelman