IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTT MCMAHON, on behalf of plaintiff and the classes defined herein, | ) ) ) ) |
| Plaintiff, | ) ) 12-cv-1410 |
| vs. | ) ) Judge Alonso |
| LVNV FUNDING, LLC; RESURGENT CAPITAL SERVICES, L.P.; ALEGIS GROUP, LLC; and TATE & KIRLIN ASSOCIATES, INC., | ) ) ) ) ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Daniel A. Edelman
Cathleen M. Combs
Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
& GOODWIN, L.L.C.
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX) (may use for service of pleadings)
Email address for service: courtecl@edcombs.com

I.  **Introduction**

Defendants LVNV Funding, LLC ("LVNV"), Resurgent Capital Services, L.P. ("Resurgent"), Alegis Group, LLC ("Alegis") and Tate & Kirlin Associates, Inc. ("T&K") violated the Fair Debt Collection Practices Act ("FDCPA") by failing to disclose, in the 148,491 letters they sent to class members, that the debts they were seeking to collect were time-barred, that they could not sue to enforce the debts, and that payment by the debtors would restart the statute of limitations, thus subjecting the debtors who made a payment to a subsequent collection suit. Defendants seek to avoid liability by arguing that: (1) the Seventh Circuit opinion in this matter, *McMahon v. LVNV Funding, LLC,* 744 F.3d 1010 (7th Cir. 2014)(*McMahon I*), did not hold that their letters violated the FDCPA; (2) plaintiff must submit extrinsic evidence to prove his case and did not; (3) defendants' failure to disclose in the letter sent to plaintiff that the debt they sought to collect was time-barred and that payment would restart the statute of limitations was not material; (4) plaintiff lacks Article III standing; (5) plaintiff cannot show that payment made by a debtor after the sending of a misleading collection letter, where the debtor had declined to pay for years, resulted from the violative letter; and (6) LVNV is not liable for the collection letters sent by the debt collector engaged by Resurgent to collect money for LVNV.

For the reasons stated below, defendants are wrong.

II. **The Seventh Circuit Has Ruled In this Case that Defendants' Failure to Disclose In the Letters Sent to Plaintiff that the Debt They Sought to Collect From Plaintiff Was Time-Barred and that Payment Would Restart the Statute of Limitations Violates the FDCPA**

Defendants' statement of the legal standard cites Seventh Circuit cases decided between 1993 and 2009. However, defendants do not cite the Seventh Circuit opinion in this matter, *McMahon I*, until a parenthetical reference to a brief filed by plaintiff's counsel in another matter, on Def.Mem., p. 9. Defendants argue that the Seventh Circuit did not hold that the letter and the validation of debt notice at issue in this case violated the Act, but instead remanded the case to the district court for plaintiff to present extrinsic evidence to the district court as to how an unsophisticated consumer would read the letter and validation of debt notice. Defendants take that

1

position even though the Seventh Circuit never mentioned extrinsic evidence in its opinion.

Defendants' conclusion is refuted by *Pantoja v. Portfolio Recovery Associates, LLC*, 852 F.3d 679 (7th Cir. 2017), reh'g and reh'g en banc denied, May 15, 2017. *Pantoja* affirmed summary judgment in favor of a consumer who did not submit survey evidence of how an unsophisticated debtor would read the letter. *Pantoja* held that a collection letter sent to collect a time-barred debt violated FDCPA §1692e, prohibiting "any false, deceptive, or misleading representation or means in connection with the collection of any debt," "because (a) it did not tell the consumer that the defendant could not sue on this time-barred debt and (b) it did not tell the consumer that if he made, or even just agreed to make, a partial payment on the debt, he would restart the clock on the long-expired statute of limitations, in effect bringing a long-dead debt back to life." *Pantoja*, 852 F.3d at 682.

Defendants argue that the holding in *Pantoja*, that extrinsic evidence was not required to prove a violation, is not applicable here because "the opinion does not address a letter which is silent as to the statute of limitations." (Def. Mem., p. 11). Defendants are arguing that a letter that provided <u>some</u> information about the debt would mislead a consumer, but a letter that provided <u>no</u> statement of the time-barred nature of the debt requires survey evidence for the plaintiff to prevail. This is absurd.

Defendants argue (Def. Mem., p. 9) that if the Seventh Circuit did not require plaintiff to produce extrinsic evidence it would have entered judgment in plaintiff's favor. However, this matter was dismissed before plaintiff could take discovery and present a motion for class certification, much less notify the class, allow opt-outs and file a motion for summary judgment. Plaintiff would have waived the right to pursue the claims on behalf of a class if he had sought summary judgment before class certification and notice. *Peritz v. Liberty Loan Corp.*, 523 F.2d 349, 352-355 (7th Cir. 1975). The Seventh Circuit did not remand the *McMahon* and the companion *Delgado* cases for the district courts to review survey evidence:

> Given this standard and the well-reasoned position put forth by the FTC and CFPB, we find that the district court in Delgado was correct in denying defendants' motion to dismiss. The McMahon court will need to take a fresh look at the class allegations in that case.

2

(*McMahon I,* 744 F.3d at 1020.)

The Seventh Circuit did not enter a finding of liability because plaintiff did not ask for one.

Defendants argue (Def. Mem., p. 12) that the question of liability is not resolved here because the Seventh Circuit "focused on whether the settlement offer on a time-barred debt could mislead the unsophisticated consumer", arguing that the language is "not plainly misleading or deceptive but might possibly mislead or deceive the unsophisticated consumer."

This analysis was rejected by the Seventh Circuit in *Pantoja*. In any event, it is certain that *McMahon* did not hold that, under the FDCPA, consumers are expected to search Google and Wikipedia to understand material information about a collection letter sent to them, as defendants appear to be arguing. (Def. Mem., p. 12)

Instead the Court used the objective "unsophisticated consumer" test. An unsophisticated consumer is familiar with the meaning of "settled" from such sources as the Internet.

> But, as we held in *Phillips*, supra, if the debt collector uses language in its dunning letter that would mislead an unsophisticated consumer into believing that the debt is legally enforceable , . . . the collector has violated the FDCPA. Because it is plausible that an unsophisticated consumer would believe a letter that offers to "settle" a debt implies that the debt is legally enforceable, it was correct in Delgado to decline to dismiss the action at this stage, and incorrect to dismiss the class allegations in McMahon. . . .
>
> Neither LVNV nor CMS gave a hint that the debts that they were trying to collect were vulnerable to an ironclad limitations defense. An unsophisticated consumer who read the dunning letter Delgado or McMahon received could have been led to believe that her debt was legally enforceable. In other words, the letters misrepresented the legal status of the debts, in violation of the FDCPA. . . . The fact that both Delgado and McMahon's letters contained an offer of settlement makes things worse, not better, since a gullible consumer who made a partial payment would inadvertently have reset the limitations period and made herself vulnerable to a suit on the full amount. That is why those offers only reinforced the misleading impression that the debt was legally enforceable. . . .
>
> The risk here is similar: a settlement offer on a timebarred debt implies that the creditor could successfully sue on the debt. If unsophisticated consumers believe either that the settlement offer is their chance to avoid court proceedings where they would be defenseless, or if they believe that the debt is legally enforceable at all, they have been misled, and the debt collector has violated the FDCPA. (*McMahon I*, 744 F.3d at 1020-1022.)

That the Court believed it was instructing collectors about how the FDCPA limits communications with debtors about time-barred debts is highlighted by its discussion about how much research a debt collector must undertake to determine if a debt is time-barred:

3

> Our decision today does not require debt collectors to conduct additional research. If a debt collector does not know whether the debt submitted for collection is timebarred, it would be easy to include general language about that possibility. That said, we find it unlikely that debt owners lack knowledge about the age of the debts they are attempting to collect. If the debt collector is the original creditor, it will know the relevant dates. If the collector is a third-party collecting on behalf of the original creditor, it should easily be able to get that information at the time the file is assigned by the original creditor on whose behalf it is acting. If the collector has purchased the debt from the original creditor, we know from the FTC that such buyers pay different amounts for debts depending on the age of the debt and the number of previous attempts to collect it, in which case whether the debt is time-barred should be known. See FTC Report 2013 at 21.

The argument that plaintiff must submit extrinsic evidence to prevail was rejected in *Pantoja, supra*, *Slick v. Portfolio Recovery Associates, LLC*, 111 F.Supp.3d 900 (N.D.Ill. 2015), *Rawson v. Source Receivables LLC*, 215 F. Supp. 3d 684 (N.D. Ill. 2016), and *Magee v. Portfolio Recovery Associates*, 12 C 1624, 2016 WL 2644763 (N.D.Ill. May 9, 2016). Each of the letters sought to collect a time-barred debt without disclosing that the debt was time-barred and without disclosing that payment on the debt would revive the statute of limitations.

Defendants do not cite these cases, although defense counsel represented the defendants in each of them. By ignoring the law of this case, and its progeny, defendants seek to reargue the positions they asserted on appeal and lost.[1] They argue that this letter falls within the second category of letters in which plaintiff can prevail only by producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive, citing *Ruth v. Triumph Partnerships*, 577 F.3d 790, 800 (7th Cir. 2009). (Def. Mem., pp. 11-12) However, Judge Gettleman held, and the Seventh Circuit

---

[1] The Summary of Argument in Appellee's Brief in McMahon is: Summary of Argument: There is nothing in the Fair Debt Collection Practices Act ("FDCPA") that requires a debt collector to notify a debtor of state law defenses. The FDCPA is not a tool for enforcement of state law. The Third and Eight Circuits have addressed the issue presented here, and both have rejected the claim that plaintiff is making here. The weight of district court authority is in accord.

Plaintiff's reliance on consent orders by the Federal Trade Commission ("FTC") and Consumer Financial Protection Bureau ("CFPB") is misplaced. The FTC has never had any rule-making or interpretive authority with respect to the FDCPA. The CFPB consent orders do not interpret the FDCPA. Thus, *Chevron* deference does not apply here. Moreover, consent orders apply only to the parties involved and not third parties like defendants here.

4

affirmed, that a letter that does not disclose the time-barred status of a debt and fails to tell of the consumer the effect of making a partial payment (restarting the statute of limitations) falls into the third category and does not require extrinsic evidence. *Pantoja v. Portfolio Recovery, LLC* 78 F. Supp.3d 743, 746 (N.D. Ill. 2015) affirmed, 852 F.3d 679 (7th Cir. 2017).

Defendants' argument that plaintiff must submit evidence of how consumer perceived the language in the collection letters (Def. Mem., p. 1) is absurd on its face. This is a material omission case. It is not possible to test an omission. The best way to test the effect of an omission on consumer's behavior is to conduct a study to determine whether the omitted fact -- that a debt is time-barred -- is material to the consumer's decision to pay a debt. That was precisely the question explored in the Goldsmith Study, which plaintiff has submitted.

Defendants argue that there is no mandatory time-barred debt disclosure requirement under the FDCPA[2], (Def. Mem., pp. 11-12), citing two district court opinions which held that letters sent in connection with the collection of time-barred debt that were silent on the question of statute of limitations are in the "clearly *not misleading* category". *Rice v. Midland Credit Management, Inc.*, 933 F. Supp. 2d 1040, 1048 (N.D. Ill. 2013), vacated on reconsideration, 12 C 1395, 2015 WL 302155 (N.D.Ill. Jan. 22, 2015) and *Crawford v. Vision Fin. Corp.*, 12 C 4397, 2012 WL 5383280 (N.D. Ill. 2012), predate all of the above cases and more importantly, *McMahon* and *Pantoja*. Defendants do note that the *Rice* opinion was vacated on reconsideration, but they do not point out it was vacated based upon the Seventh Circuit's opinion in *McMahon I*. 2015 WL 302155 at *1. Somehow, defendants do not see fit to discuss the Seventh Circuit cases, *McMahon* and *Pantoja*, which mandate such a disclosure.

Defendants argue that the Validation of Debt ("VOD") is not a communication in

---

[2] Defendants cite, at page 13 of their memorandum, Judge Springmann's comment in the Memorandum Opinion and Order granting class certification in *Anguiano v. LVNV Funding, LLC*, No. 2:12-00523-TLS-APR (Nov. 10, 2015, N.D. Ind.)(dkt.#88) that the court "was not aware of any binding precedent . . . holding that a letter that is silent regarding the statute of limitations, and the consequences of partial payment on a time-barred debt, is so clearly misleading that extrinsic evidence is not necessary." This comment predated the Seventh Circuit opinion in *Pantoja*, binding precedent on that precise issue.

5

connection with collection of a debt because it was sent in response to McMahon's request for verification. This argument was rejected in *Carlin v. Davidson Fink*, 852 F.3d 207 (2nd Cir. 2017). Moreover, each VOD sub-class member also received the initial debt collection letter. As the Seventh Circuit notes, the VOD makes the violation worse. "Resurgent kept mum, however, about the advanced age of the debt—a detail that would have alerted either McMahon or his lawyer to the fact that he had an iron-clad defense under the statute of limitations." *McMahon I*, 744 F.3d at 1013.

Defendants' argument that a letter seeking to collect a time barred debt is actionable only if it threatens litigation (Def.Mem., 15), is contrary to the Seventh Circuit's opinion in this case:

> We recognize that this interpretation conflicts with that of the Eighth and Third Circuits. See *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 33 (3d Cir.2011); *Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767, 771 (8th Cir.2001). With respect, however, we have concluded that the statute cannot bear the reading that those courts have given it.1 In their view, if a dunning letter on a time-barred debt states that the collector could sue but promised not to, that letter would not violate the FDCPA, since no litigation was actually threatened (and indeed was expressly rejected). On its face, that may seem reasonable, but closer examination reveals why it is not. The plain language of the FDCPA prohibits not only threatening to take actions that the collector cannot take, but also the use of any false, deceptive, or misleading representation, including those about the character or legal status of any debt. *McMahon I*, 744 F.3d 1010, 1020–21 (7th Cir. 2014).

Defendants then cite language in *McMahon I* stating that an unsophisticated consumer "could have been led to believe," arguing the opinion does not state that a disclosure is required. (Def. Mem., p. 13) Defendants make the same argument with regard to language in the amicus brief filed by the FTC and the CFPB in the appeal of this matter, (Def. Mem., p. 14), arguing that the conditional language "the letter 'could plausibly' mislead a consumer" implies that no disclosures are required.

Judge Hamilton addressed the three categories of FDCPA letters laid out in *Ruth v. Triumph Partnerships*, 577 F.3d 790, 800-801 (7th Cir. 2009) in determining that the *Pantoja* collection letter did not require extrinsic evidence even though the court's reading was not the only reasonable way to read the letter:

> Where the FDCPA requires clarity, however, ambiguity itself can prove a violation. E.g., *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 323 (7th Cir. 2016), citing *Chuway v. National Action Fin. Servs., Inc.*, 362 F.3d 944, 947–48 (7th Cir. 2004).

>We are not sure that the only reasonable way to read defendant's letter is the district court's reading, that the letter would confuse all unsophisticated consumers, but we are confident that it is one reasonable way to read it. Closer to the heart of the issue, this letter is an example of careful and deliberate ambiguity. (Recall how it adopts part of the language from another debt collector's consent decree.) The very ambiguity that Portfolio Recovery claims should save it from summary judgment convinces us that summary judgment was appropriate. The carefully crafted language, chosen to obscure from the debtor that the law prohibits the collector from suing to collect this debt or even from threatening to do so, is the sort of misleading tactic the FDCPA prohibits. The only reason to use such carefully ambiguous language is the expectation that at least some unsophisticated debtors will misunderstand and will choose to pay on the ancient, time-barred debts because they fear the consequences of not doing so. *Pantoja*, 852 F.3d at 687.

That "careful and deliberate ambiguity" is present in the letters sent by defendants to Mr. McMahon and the class and *Pantoja* holds that extrinsic evidence is not required to show a violation.

### III. Plaintiff Has Submitted Extrinsic Evidence

Even though he need not submit extrinsic evidence in connection with his motion for summary judgment, Mr. McMahon did.

In connection with the motion for summary judgment, plaintiff submitted an empirical study concluding that "the fact that a debt is time-barred is material," the Goldsmith Study. (The Goldsmith Study, Pl. SMF ¶¶59, 60, Appendix 20) The Goldsmith Study is based upon objective evidence. The FTC, the CFPB, the New Mexico Attorney General, and the Seventh Circuit, by way of its reliance on the FTC and CFPB's position, have all relied upon Dr. Goldsmith's research and report. Defendants cite their Daubert Motion as further grounds for disputing the Goldsmith Study. Plaintiff's Response to the Daubert Motion amply supports this Court considering the Goldsmith Study.

Plaintiff also submitted evidence that five federal agencies and a state attorney general explicitly endorsed a duty-to-disclose by debt collectors and issued public statements stating such disclosures must be made [N.M. Ann. Code §12.2.12.9 (2012)[New Mexico Register/Volume XXI, Number 23/effective Dec. 15, 2010]1) Massachusetts (Mass. Regs. Code tit. 940 §7.07 (24)), (2) the City of New York (6 Rules of the City of New York 2-191 (2010)), (3) New York State (23 NYCRR 1), (4) North Carolina (N.C.G.S. §58-70-115, effective Oct. 1, 2009) and (5) West

7

Virginia (West Virginia Code, §46A-2-128(f), eff. June 6, 2014) Citing, Fed. Trade Comm'n, The Structure and Practice of the Debt Buying Industry 47 (2013) (FTC Report 2013)].

It is significant that Defendants admit that they have a Compliance Department and an in-house legal department (Defendants' Statement of Material Facts, ¶14). Defendants' legal and compliance departments should have been aware of the concerns raised by the Goldsmith Study and the FTC Reports. Defendants became were aware of and complied with the requirements imposed on debt collectors collecting time-barred debt in New York City and New Mexico. Plaintiff's Statement of Material Facts ¶¶56, 57.

This is a non-disclosure case. The claim is that the letter and validation of debt notice did not advise McMahon that the debt was time-barred and that if he paid on the debt he would restart the statute of limitations. The evidence plaintiff has submitted shows that informing a consumer that a debt is time-barred is material to the consumer's decision to pay a debt.

## IV. The Seventh Circuit Has Determined That the Defendants' Deception Here is Material

Defendants' argument that its deception is not material is frivolous, given the care with which Seventh Circuit has addressed the issue in this *McMahon I and II* and its subsequent decision in *Pantoja*.

As determined by *Janetos*, 825 F.3d at 324, the question of materiality under §1692e is whether "allegedly false and misleading statements . . . could have any practical impact on a consumer's rights or decision-making process." With regard to the failure of a debt collector collecting a time-barred debt to inform the debtor that the debt is time-barred and the consequences, the Seventh Circuit has repeatedly identified the impact on a consumer's rights and decision-making process. *McMahon I* stated: "Neither LVNV nor CMS gave a hint that the debts that they were trying to collect were vulnerable to an ironclad limitations defense. An unsophisticated consumer who read the dunning letter Delgado or McMahon received could have been led to believe that her debt was legally enforceable. In other words, the letters misrepresented the legal status of the debts, in violation of the FDCPA." 744 F.3d at 1021. Further, "a settlement

8

offer on a timebarred debt implies that the creditor could successfully sue on the debt. If unsophisticated consumers believe either that the settlement offer is their chance to avoid court proceedings where they would be defenseless, or if they believe that the debt is legally enforceable at all, they have been misled, and the debt collector has violated the FDCPA". 744 F.3d at 1022. *Pantoja* noted: "We begin with the danger that a debtor who accepts the offered terms of settlement will, by doing so, waive his otherwise absolute defense under the statute of limitations. Only the rarest consumer-debtor will recognize this danger." 852 F.3d at 684. The deception defendants practiced on class members here is material.

Defendants' factual assertions in support of their materiality argument are questionable at best, sanctionable at worst. Defendants improperly submit an affidavit to argue that their collection results after disclosure show an increase in amounts collected. (Affidavit of Hammond, Def Mem., Exhibit K). The affidavit conflicts with a Stipulation the parties entered in concerning this case: Stipulation Resolving Discovery Disputes As To Purchase and Collection of Out of Statute Debt, I, *Mitchell v. LVNV Funding*, Case No. 2:12-cv-00523-TLS (Dkt No. 61). Defendants entered into the stipulation to avoid plaintiff's written discovery and depositions on the precise areas discussed in the stipulation. (Exhibit 1, December 15, 2014Notice of Deposition); (Exhibit 2, February 25, 2015 email correspondence from Jennifer Weller) and (Exhibit 3, Stipulation Resolving Discovery Disputes as to Purchase and Collection of Out-of-Statute Debt). Plaintiff is concurrently filing a motion to strike the Hammond affidavit.

Defendants stipulated that they collected less on debts that are outside the statute of limitations and pay less for portfolios containing time-barred debt. Defendants entered into that Stipulation in order to avoid having to produce documents and a deponent to answer questions about the areas that the Hammond Affidavit purports to address. The submission of the Hammond Affidavit to dispute the statements in the Stipulation in these circumstances is improper and sanctionable.

The Hammond Affidavit is improper for other reasons. Hammond was never disclosed to plaintiff as a witness. The affidavit does not attach copies of the records reviewed by the affiant in

9

violation of Fed.R.Civ.P. 56. Furthermore it is incomplete. It does not explain how many times class members were contacted and how. It cannot be the basis for a summary judgment that defendants' practices were immaterial.

## V.     Plaintiff Has Article III Standing

Even though this case was filed over five years ago and has been to the Seventh Circuit twice, defendants raise the question of standing for the first time in their motion for summary judgment. They do so without citing any case in which a court has held that a plaintiff asserting informational injury under the FDCPA did not have Article III standing. Following the principles articulated in *Spokeo*, there have been dozens of post-*Spokeo* decisions finding that a plaintiff asserting an informational injury under the FDCPA did have Article III standing.[3] There is no

---

[3]    *See, Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990 (11th Cir. 2016); *Blaha v. First Nat'l Collection Bureau, Inc.*, 2016 U.S. Dist. LEXIS 157575 (D.N.J. Nov. 10, 2016); *Daubert v. NRA Group, LLC*, 2016 WL 4245560 (M.D.Pa. Aug. 11, 2016); *George v. Wright, Lerch & Litow, LLP Attorneys at Law*, 2016 WL 6963990 (S.D.Ind. Nov. 29, 2016); *Everett v. Fin. Recovery Servs., Inc.*, 2016 WL 6948052 (S.D.Ind. Nov. 28, 2016); *Zirogiannis v. Seterus, Inc.*, 2:15-cv-05884-SJF-ARL, 2016 WL 7410541 (E.D.N.Y Nov. 28, 2016); *Paz v. Portfolio Recovery Associates, LLC*, 2016 WL 6833932 (N.D.Ill. Nov. 21, 2016); *Evans v. Portfolio Recovery Associates, LLC*, 2016 WL 6833930 (N.D.Ill. Nov. 20, 2016); *Allah Mensah v. Law Office of Patrick M. Connelly, P.C.*, 2016 WL 6803775 (D.Md. Nov. 17, 2016); *Bowse v. Portfolio Recovery Associates, LLC*, 2016 WL 6476545 (N.D.Ill. Nov. 2, 2016); *Munoz v. California Bus. Bureau, Inc.*, 2016 WL 6517655 (E.D.Cal. Nov. 1, 2016); *Hill v. Accounts Receivable Servs., LLC*, 2016 WL 6462119 (D.Minn. Oct. 31, 2016); *Hayes v. Convergent Healthcare Recoveries, Inc.,* 2016 WL 5867818 (C.D.Ill. Oct. 7, 2016); *Macy v. GC Servs. Ltd. P'ship*, 2016 WL 5661525 (W.D.Ky. Sept. 29, 2016); *Janetos v. Fulton Friedman & Gullace, LLP*, No. 12 C 1473, Slip Op. (N.D.Ill. Sept. 21, 2016); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747 (N.D.Ill. Sept. 20, 2016); *Linehan v. Allianceone Receivables Mgmt., Inc.*, 2016 WL 4765839 (W.D.Wash. Sept. 13, 2016); *Carrington Mortg. Servs., LLC v. Dye*, 2016 WL 4766484 (M.D.Ga. Sept. 12, 2016); *Sayles v. Advanced Recovery Sys., Inc.*, 2016 WL 4522822 (S.D.Miss. Aug. 26, 2016); *Hall v. Glob. Credit & Collection Corp.*, 2016 WL 4441868 (M.D.Fla. Aug. 23, 2016); *Mogg v. Jacobs*, 2016 W 4395899 (S.D.Ill. Aug. 18, 2016); *Prindle v. Carrington Mortg. Servs., LLC*, 2016 WL 4369424 (M.D.Fla. Aug. 16, 2016); *Quinn v. Specialized Loan Servicing, LLC*, 2016 WL 4264967 (N.D.Ill. Aug. 11, 2016); *Irvine v. I.C. Sys., Inc.*, 2016 WL 4196812 (D.Colo. July 29, 2016); *McCamis v. Servis One, Inc.*, 2016 WL 4063403 (M.D.Fla. July 29, 2016); *In re Robinson*, 554 B.R. 800 (W.D.La.Bankr. 2016); *Dickens v. GC Servs. Ltd. P'ship*, 2016 WL 3917530 (M.D.Fla. July 20, 2016); *Lane v. Bayview Loan Servicing, LLC*, 2016 WL 3671467 (N.D.Ill. July 11, 2016); *Tourgeman v. Collins Fin. Servs., Inc.*, 2016 WL 3919633 (S.D.Cal. June 16, 2016); *Nyberg v. Portfolio Recovery*

doubt under *Spokeo* and other long standing precedent that plaintiff has sufficiently alleged a cognizable informational injury—the denial of his right to truthful information—for standing purposes.

In *Spokeo*, the Court confirmed that informational injury—being denied access to information to which an individual is entitled—is a concrete injury under Article III. *See* 136 S. Ct. at 1549–50. And, the Court made clear, the denial of that information is on its own sufficiently concrete; "a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." *Id*. at 1549.

In support of this principle, the Court reaffirmed its past precedents, citing *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 449 (1989), which held the plaintiff had standing to challenge the Justice Department's failure to provide access to information, the disclosure of which was required by the Federal Advisory Committee Act. The inability to obtain such information, the Court explained there, "constitutes a sufficiently distinct injury to provide standing to sue." *Id*. at 449. Similarly, the *Spokeo* Court invoked *Federal Election Comm'n v. Akins* for a similar point, "confirming that a group of voters' 'inability to obtain information' that Congress had decided to make public is a sufficient injury in fact to satisfy Article III." *Spokeo*, 136 S. Ct. at 1549–50 (citing *Akins*, 524 U.S. 11, 20–25 (1998)).

The Supreme Court has recognized this form of injury for more than three decades. In *Akins*, the Court held that "a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed" 524 U.S. at 21. *Akins* in turn cited *Havens Realty Corp. v. Coleman*, in which the Court held that a housing-discrimination "tester" had standing based on a violation of "[his] statutorily created right to truthful housing information." 455 U.S. 363, 374 (1982); *see also, Village of Bellwood v. Dwivedi*, 895 F.2d 1521, 1525-1527 (7th Cir. 1990). A "tester who has been the object of a misrepresentation made unlawful under [the statute] has suffered injury in precisely the form the statute was intended to guard

---

*Associates, LLC*, 2016 WL 3176585 (D.Or. June 2, 2016).

against, and therefore has standing." *Havens*, 455 U.S. at 373–74. So too here. Plaintiff has shown that he was "the object of a misrepresentation made unlawful under" § 1692e and § 1692f of the FDCPA. *Id*. Indeed, the case for standing is stronger here than in *Havens*; whereas the tester in *Havens* "fully expect[ed] that he would receive false information," *id*., Plaintiff had no reason to believe defendants would omit material facts about the legal status of the debt and the consequences of payment. Accordingly, plaintiff "has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing." *Id*., *Carlson*, 837 F.3d 753 (7th Cir. 2016); *Janetos, supra,* 825 F.3d at 319.

Contrary to defendants' claims, class members do not each have to individually demonstrate they have standing to assert the claim. *Bernal v. NRA Group, LLC*, 318 F.R.D. 64, 71-72 (N.D. Ill. 2016).

### VI. Class Members Are Entitled To a Judgment For Amounts Paid After Receipt of the Violative Letters

Plaintiff seeks actual damages for class members who paid after receiving the violative letter from defendants. Defendants argue that plaintiff cannot show any payment made resulted from the violative letter. (Def. Mem., p. 21). However, it is highly unlikely that a class member who failed to pay during the five year pendency of the statute of limitations would have paid subsequently, but for the receipt of the dunning letter.

As discussed above, the fact that the debt is out of statute is material. It can be inferred that the class members who paid defendants after receipt of collection letters containing a material omission, did so because of the collection letter. *Vasquez v. Superior Court*, 484 P.2d 964 (Cal. 1971). The fact of reliance upon alleged false representations may be inferred from the circumstances attending the transactions which often times afford much stronger and more satisfactory evidence of the inducement.

> When representations have been made in regard to a material matter and action has been taken, in the absence of evidence showing the contrary, it will be presumed that the representations were relied on. . . It is sufficient for our present purposes to hold that if the trial court finds material misrepresentations were made to the class members, at least an inference of reliance would arise as to the entire class." *(Vasquez* at 973)

12

*Accord, Skalbania v. Simmons*, 443 N.E.2d 352 (Ind. App. 1982).

Similarly under federal law, in cases involving a material omission, it is only necessary to establish that the facts withheld are material in the sense that a reasonable person might have considered them important in the making of his decision. *Affiliated Ute Citizens of Utah v. U.S.* 406 U.S. 128 (1972). "When a defendant's fraud consists primarily of omissions, requiring plaintiff to show a speculative set of facts, i.e., how he would have behaved if omitted material information had been disclosed places an unrealistic evidentiary burden on the 10b plaintiff." *In Re Smith Barney Transfer Agent Litigation*, 290 F.R.D. 42, 47 (S.D.N.Y. 2013)(internal citations omitted). Similarly, *Rikos v. Procter & Gamble Co.*, 799 F.3d 497 (6th Cir. 2015), held:

> causation as to each class member is commonly proved more likely than not by materiality. That showing will undoubtedly be conclusive as to most of the class. Thus plaintiffs satisfy their burden of showing causation as to each by showing materiality to all. If the trial court finds material misrepresentations were made to the class members, at least an inference of reliance would arise as to the entire class." *Id* at 513. (internal citations omitted).

The notion that plaintiff has to prove reliance based on an omission of a material fact "ignores case law which permits the presumption or inference of reliance and causation, where omission of material facts are common to the class . . . in the context of both common law and statutory fraud." *Strzakowiski v. General Motors Corp.*, 04cv4740, 2005 WL 2001912, *9 (D.N.J. Aug. 16, 2005)(citing *Varacallo v. Massachusetts Mutual Life Ins. Co.*, 332 N.J. Super. 31, 752 A.2d 807, 817(App. Div. 2000)); *Patterson v. BP America Production Co.*, 240 P.3d 456 (Col. 2010)("presuming or inferring reliance is particularly compelling when there is evidence that a defendant intentionally withheld information to induce the very action that plaintiffs too.").

Class members are entitled to a judgment against defendants for the amount they paid after receipt of the Letter.

## VII.    LVNV Is a Debt Collector Liable for the Acts of Resurgent and its Agent in Sending Collection Letters Which Violate the FDCPA

Defendants assert that LVNV is not liable here without even mentioning the Seventh Circuit opinion in *Janetos, supra.* *Janetos* held that a debt collector is liable for violations of the FDCPA committed by others on its behalf, stating: "A debt collector should not be able to avoid

13

liability for unlawfully contracting with another company to do what the law does not allow it to do for itself." LVNV is a debt collector and is liable for the debt collection activities of its agents.

Contrary to defendants contention, LVNV does not just "hold the ownership rights of purchased debt". (Def. Mem., 25) LVNV admits: (i) that LVNV is engaged in the business of purchasing or acquiring, or claiming to purchase or acquire, allegedly defaulted debts originally owed to others and incurred for personal, family, or household purposes [Response to Plaintiff's Statement of Material Facts including Statements in Genuine Dispute, *Mitchell v. LVNV Funding*, No. 2:12-cv-00523-TLS-APR (N.D. Ind.)(Dkt# 155)("Mitchell SMF")(Exhibit 4) ¶7]; (ii) LVNV purchases portfolios of both domestic (U.S.) and international consumer debt from credit grantors including banks, finance companies, and other debt buyers; (Mitchell SMF ¶8); (iii) LVNV outsources the management (collection) of purchased debts to Resurgent (Mitchell SMF ¶9); (iv) Resurgent is the master servicing agent for LVNV Funding and Resurgent holds limited power of attorney for LVNV Funding (Mitchell SMF ¶10); (v) LVNV provides Resurgent with a limited power of attorney to manage and work its inventory (Answer ¶23; Mitchell SMF ¶12); (vi) Defendant Resurgent operates as a collection agency and holds one or more collection agency licenses (Answer ¶15; Mitchell SMF ¶13); (vii) Resurgent does not own any debts, but merely acts as a master servicer for debt collection purposes (Mitchell SMF ¶13); (viii) Resurgent collects debts on behalf of LVNV directly, or in many cases, will outsource the recovery activities to other specialized, licensed collection agencies (Mitchell SMF ¶14; Defendants' Rule 56.1 Statement of Material Facts, Dkt #237, ¶9); (ix) Defendant Resurgent uses the mails and telephones to collect debts (Mitchell SMF ¶15); (x) LVNV is the plaintiff in thousands of collection lawsuits filed in Cook County Illinois alone (Mitchell SMF ¶16); (xi) LVNV and Resurgent are affiliated with Sherman Financial Group. (Mitchell SMF ¶11; Answer ¶27).

A debt collector as defined under the FDCPA includes "any person whose principal purpose is to collect debts . . . ." 15 U.S.C. §1692a(6). LVNV buys bad debts and refers them to its debt collector agent Resurgent who refers them for collection to third parties. LVNV receives any money collected by its agent debt collectors and sues in its name to collect if other debt collection

pressures are unsuccessful. LVNV is a debt collector.

Indeed, LVNV has previously admitted that it "is a 'debt collector' as defined by the FDCPA because it purchases or services thousands of alleged consumer debts after those debts are in default with the putative original creditor. LVNV attempts to collect these debts directly, *or indirectly through debt collection law firms or services* [sic] who make collection phone calls, send collection letters, or otherwise collect putative consumer debts." Exhibit 5.

The cases that defendants cite for the proposition that LVNV is only liable if it sends the collection letter are not good law in light of *Janetos*.

LVNV then cites *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 135 (4th Cir. 2016), cert. granted, 137 S. Ct. 810, 196 L. Ed. 2d 595 (2017) for the proposition that it is not a debt collector because it owns the debts. That is not the relevant question here though. *Henson* expressly notes that "whether a person qualifies as a debt collector under the threshold definition set forth in 15 U.S.C. § 1692a(6). . .is ordinarily based on whether a person collects debt on behalf of others or for its own account, **the main exception being when the "principal purpose" of the person's business is to collect debt**." (Emphasis added) LVNV falls under the exception. Santander is a loan company that actually originates loans and purchases active portfolios of loans that contain a small percentage of loans in default. LVNV's principal (indeed only) purpose is to buy debts and collect on them.

## VI. CONCLUSION

For the foregoing reasons, plaintiff respectfully urges the Court to deny defendants' cross-motion for summary judgment on liability.

Respectfully submitted,

s/ Tiffany N. Hardy
Tiffany N. Hardy

Daniel A. Edelman
Cathleen M. Combs
Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
& GOODWIN, L.L.C.
20 S. Clark Street, Suite 1500

15

Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX) (may use for service of pleadings)
Email address for service: courtecl@edcombs.com

**CERTIFICATE OF SERVICE**

      I, Tiffany N. Hardy, hereby certify that on June 16, 2017, I caused to be filed the foregoing document via the CM/ECF System, which caused notification of such filing to be sent to the following parties via electronic mail:

Nabil G. Foster
nfoster@hinshawlaw.com
Hinshaw & Culbertson, LLP
222 North LaSalle Street
Suite 300
Chicago, IL 60601

David M. Schultz
dschultz@hinshawlaw.com
Hinshaw & Culbertson, LLP
222 North LaSalle Street
Suite 300
Chicago, IL 60601

Jennifer W. Weller
jweller@hinshawlaw.com
Hinshaw & Culbertson, LLP
222 North LaSalle Street
Suite 300
Chicago, IL 60601

                                                                         s/ Tiffany N. Hardy
                                                                         Tiffany N. Hardy

Daniel A. Edelman
Cathleen M. Combs
 Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
& GOODWIN, L.L.C.
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX) (may use for service of pleadings)
Email address for service: courtecl@edcombs.com