**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SCOTT MCMAHON, | ) | |
| on behalf of plaintiff and the classes defined | ) | |
| herein, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 12-cv-1410 |
| vs. | ) | |
| | ) | Judge Alonso |
| LVNV FUNDING, LLC; | ) | |
| RESURGENT CAPITAL SERVICES, L.P.; | ) | |
| ALEGIS GROUP, LLC; and | ) | |
| TATE & KIRLIN ASSOCIATES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF HIS
MOTION FOR SUMMARY JUDGMENT**

Daniel A. Edelman
Cathleen M. Combs
Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX) (may use for service of pleadings)
Email address for service: courtecl@edcombs.com

## I.  Introduction

Defendants LVNV Funding, LLC ("LVNV"), Resurgent Capital Services, L.P. ("Resurgent") and Alegis Group, LLC ("Alegis") and Tate & Kirlin ("Tate & Kirlin") (collectively "defendants") violated the Fair Debt Collection Practices Act ("FDCPA") by failing to disclose, in the  letters they sent to class members here, that the debts they were seeking to collect were time-barred, that they could not sue to enforce the debts, and that payment by the debtors would restart the statute of limitations[1], thus subjecting the debtors who made a payment to a subsequent collection suit.  In their Response in Opposition to Plaintiff's Motion for Summary Judgment ("Def Resp"), defendants again raise many of the arguments they raised in their cross-motion for summary judgment.  Rather than resubmit arguments already raised, where appropriate, plaintiff will cite portions of Plaintiff's Response to Defendants' Motion for Summary Judgment.

Defendants seek to avoid liability by arguing: (1) that *McMahon v. LVNV Funding, LLC,* 744 F.3d 1010 (7th Cir. 2014) ("*McMahon I*") did not hold that McMahon's letter violated the FDCPA; (2) that plaintiff must submit extrinsic evidence to prove his case and did not; (3) partial payment would not revive the statute of limitations on plaintiff's debt; (4) that LVNV is not liable for the debt collection letters sent by the debt collector engaged by Resurgent to collect money for LVNV; (5) including the net worth of LVNV along with net worth of Resurgent would be stacking; (6) the FDCPA damage factors favor defendants and (7) plaintiff cannot show actual damages. For the reasons stated below, defendants

---

[1]     At footnote 1 of Defendants' Response Brief, defendants argue that "(t)he claim that a partial payment would 'revive' the statute of limitations was not plead in Plaintiff's second Amended Complaint nor was it addressed by Plaintiff's proffered expert."  However, the Seventh Circuit in its opinion stated: "The fact that both Delgado and McMahon's letters contained an offer of settlement makes things worse, not better, since a gullible consumer who made a partial payment would inadvertently have reset the limitations period and made herself vulnerable to a suit on the full amount.  That is why those offers only reinforced the misleading impression that the debt was legally enforceable."  *McMahon I*, 744 F.3d at 1021. The revival by partial payment is not a separate claim, but part of the misrepresentation claim.  It did not need to be plead separately.

1

are wrong.

**II.** *McMahon I* **Held That Defendants' Failure to Disclose In the Letter  Sent to Plaintiff that the Debt They Sought to Collect From Plaintiff Was Time-Barred and that Payment Would Restart the Statute of Limitations Violates the FDCPA**

Plaintiff incorporates §II of his Response to Defendants' Motion for Summary Judgment (dkt #255), beginning with the third sentence.

**III.    Plaintiff Has Submitted Extrinsic Evidence**

Plaintiff incorporates §III of his Response to Defendants' Motion for Summary Judgment (dkt #255).

**IV.    Partial Payment Would Revive the Statute of Limitations On Plaintiff's Debt**

Defendants argue that a partial payment would not revive the statute of limitations on Mr. McMahon's gas bill citing 810 Ill. Comp. Stat. Ann. §5/2-725(1). Defs Resp at 4. Defendants fail to quote 5/2-725(4), which states: "This Section does not alter the law on tolling of the statute of limitations. . . ." Tender of a partial payment tolls a statute of limitations. *Lew Morris Demolition Co. v. Board of Educ. of City of N.Y.,* 40 N.Y.2d 516, 521–522, 387 N.Y.S.2d 409, 355 N.E.2d 369 (1976).

Further, the Seventh Circuit found in *McMahon I* that "a gullible consumer who made a partial payment would inadvertently have reset the limitations period and made herself vulnerable to a suit on the full amount." *McMahon I*, 744 F.3d at 1021.

Indeed, as discussed in *Pantoja,*

On this point, case law allows some room for disagreement about the precise scope of Illinois law, such as which statute applies, whether the new promise to pay must be explicit or may be implied, and whether the new promise to pay must be in writing.

Portfolio Recovery also points out that the most relevant precedents are relatively old. None of those points save this letter from being deceptive.

Whatever the precise scope of the Illinois law on restarting the statute of limitations clock with a partial payment or new promise to pay, either step would have put Pantoja in a much worse legal position than he would have been in before taking the step. Before he received defendant's letter, he had an absolute defense to any possible collection suit, which would have been illegal to file. If

he had made or promised to make a partial payment, he could have been sued, likely as a pro se defendant, in a new suit. In such a suit, at best, he would have had to challenge the collector's reliance on these Illinois statutes and case law that would have given the collector substantial support. Silence about that significant risk of losing the protection of the statute of limitations renders Portfolio Recovery's dunning letter misleading and deceptive as a matter of law. *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 685 (7th Cir. 2017).

The Seventh Circuit has determined that a partial payment is a legal trap for an unsophisticated consumer.

**V.     LVNV Is a Debt Collector Liable for the Acts of Resurgent and its Agent in Sending Collection Letters Which Violate the FDCPA**

Plaintiff incorporates §VII of his Response to Defendants' Motion for Summary Judgment (dkt #255).

LVNV's liability is not vicarious.

All liable debt collectors must be held separately to the penalties set forth in the statutory damages provision. . . . "The FDCPA civil damages provision does not distinguish between directly and vicariously liable debt collectors. Rather, it applies unambiguously to "any debt collector who fails to comply" with the Act. 15 U.S.C. § 1692k(a). . . . The violation here is statutory, not tortious. Vicarious liability in tort law is premised on ensuring that a financially responsible principal will respond if its agent harms a third party while acting on its behalf. The relative fault or actual conduct of the principal is irrelevant under this standard; liability is premised instead solely on the relationship between the principal and its agent. . . If (a debt buyer) were permitted to hide behind (the debt collector's) insolvency, it would be encouraged to outsource unethical debt collection practices to judgment-proof debt collectors. . . . *Janetos v. Fulton Friedman & Gullace, LLP*, No. 12 C 1473, 2016 WL 7240750, at *2 (N.D. Ill. Dec. 15, 2016)

Further, none of the cases cited by LVNV alleged that the debt buyer was engaged in collection activity because it filed suit in its own name. *Kasalo v. Trident Asset Management, LLC*, 53 F. Supp.3d 1072 (N.D. Ill., July 7, 2014) asserted that the bad debt buyer was liable simply because it bought debts in default. There was no evidence that the bad debt buyers in *Aker v. Bureaus Inv. Grp.*, No. 12 C 03633, 2014 WL 4815366 (N.D. Ill., Sept. 29, 2014) and *Gold v. Midland Credit Management, Inc.*, 82 F.Supp.3d 1064 (N.D. Cal., Mar. 10, 2015) were engaged in collection activities. Plaintiff here has offered evidence that LVNV is engaged in collection activities because it owns debts and files suit in its own name frequently enough to meet the FDCPA standard of having a "principal purpose to collect

3

debts."

### A. *Santander* Does Not Apply to "Principal Purpose" Debt Buyers

In footnote 6, defendants cite *Henson v. Santander Consumer USA Inc.*, __ U.S. __, 2017 WL 2507342 (June 12, 2017) to argue that any entity that purchases a debt after default is not a debt collector. Defendants are wrong.

In *Santander*, the Supreme Court issued a unanimous decision holding that Santander was not a debt collector under one of the two definitions of "debt collector" in the Fair Debt Collection Practices Act ("FDCPA"). This narrow opinion held that Santander was not subject to the FDCPA as an entity regularly collecting debts "owed or due another." It did not address application of the other "principal purpose" definition, which was not at issue before the Supreme Court. The district court, *Henson v. Santander Consumer USA Inc.*, 12cv3519, 2014 WL 1806915 at *4 (D. Md. May 6, 2014), and the Fourth Circuit, *Henson v. Santander Consumer USA Inc.*, 817 F.3d 131, 137 (4th Cir. 2016), had both concluded that Santander was not a "principal purpose" debt collector.

Santander was in fact in the auto finance business, in the principal business of extending credit. It purchased a portfolio of auto paper from CitiFinancial. A percentage of the $3.55 billion portfolio, consistent with the usual default rates on consumer automobile paper, was in default. Plaintiffs' debts were among those in default. *Henson v. Santander Consumer USA Inc.*, 12cv3519, 2014 WL 1806915 at *4 (D. Md. May 6, 2014); *Henson v. Santander Consumer USA Inc.*, 817 F.3d 131, 134, 140 (4th Cir. 2016).

The relevant portion of the FDCPA definition of "debt collector," in 15 U.S.C. §1692a(6), is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

"The statute contains two categories of debt collector, those who collect debts as their 'principal

purpose,' and those who do so 'regularly.'" *Hester v. Graham, Bright & Smith*, 289 Fed.Appx. 35, 41 (5th Cir. 2008). *Accord, Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 61 (2d Cir. 2004) ("The FDCPA establishes two alternative predicates for "debt collector" status — engaging in such activity as the 'principal purpose' of the entity's business and 'regularly' engaging in such activity. 15 U.S.C. §1692a(6)."); *Arencibia v. Mortgage Guaranty Ins. Corp.*, 2:15cv248, 2015 WL 7076691 (M.D.Fla., Nov. 13, 2015) ("§1692a(6)'s second definition is limited to entities attempting to collecting debts 'owed or due another.'"); *Schlegel v. Wells Fargo Bank, N.A.*, 720 F.3d 1204, 1208 (9th Cir. 2013); *Little v. World Fin. Network, Inc.*, 89cv346, 1990 WL 516554, at *2–4 (D. Conn. July 26, 1990) ("the two prongs of the statutory definition of debt collector are separated by a comma and the word "or", indicating that there are alternative definitions."). An entity meeting either one of the two definitions qualifies as a debt collector. *See Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 405 (3d Cir. 2000).

The *Santander* opinion held that because Santander owned all legal and equitable rights to the debt in question, it did not qualify under the "regularly collects" part of the definition, because the debts were not "owed or due or asserted to be owed or due another."

The *Santander* opinion does not purport to address "the principal purpose of which is the collection of any debts" and it was disclaimed in briefs and oral argument:

> Second, the parties briefly allude to another statutory definition of the term 'debt collector'—one that encompasses those engaged "in any business the principal purpose of which is the collection of any debts." §1692a(6). But the parties haven't much litigated that alternative definition and in granting certiorari we didn't agree to address it either. [¶] With these preliminaries by the board, we can turn to the much narrowed question properly before us. (p. 3)

Thus, a debt buyer, whose primary or only purpose is the acquisition and collection of bad debts, remains a covered debt collector under the FDCPA.

**B.** **"Owed or Due Another" Modifies** *Only* **the Second, "Regularly Collects" Definition of Debt Collector**

The phrase "debts owed or due or asserted to be owed or due another," relied on in *Santander*, is properly read as modifying *only* "who regularly collects or attempts to collect, directly or indirectly" and not "the principal purpose of which is the collection of any debts".

There is a principle of statutory construction known as the "rule of the last antecedent": "When this Court has interpreted statutes that include a list of terms or phrases followed by a limiting clause, we have typically applied an interpretive strategy called the 'rule of the last antecedent.' See *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). The rule provides that 'a limiting clause or phrase ... should ordinarily be read as modifying only the noun or phrase that it immediately follows.' *Ibid.*; see also Black's Law Dictionary 1532–1533 (10th ed. 2014) ('[Q]ualifying words or phrases modify the words or phrases immediately preceding them and not words or phrases more remote, unless the extension is necessary from the context or the spirit of the entire writing'); A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 144 (2012)." *Lockhart v. United States*, 136 S.Ct. 958, 962-3, 194 L.Ed.2d 48 (2016). In *Lockhart*, the court held that in a statute enhancing sentences for prior convictions for crimes "relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward," the limiting phrase "involving a minor or ward" applied only to "abusive sexual conduct" and not the other two crimes, so that his prior conviction for sexual abuse of an adult triggered the enhancement.

The principle applies with particular force in the case of the FDCPA definitions of "debt collector," because the statute distinguishes between "debts owed or due or asserted to be owed or due another" and "any debts". It is well settled that "the word 'any' has an expansive meaning, that is, one or some indiscriminately of whatever kind." *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 219 (2008) (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)); see also *HUD v. Rucker*, 535 U.S. 125, 131 (2002); *United States v. Clayton*, 613 F.3d 592, 596 (5th Cir.2010); Merriam–Webster's Collegiate

6

Dictionary 56 (11th ed. 2007). The use of the word "any" to modify a term "suggests a broad meaning." *Ali,* 552 U.S. at 218–19; see also *Clayton,* 613 F.3d at 596 ("The CCPA uses the modifier 'any' in describing the tax debts to which it applies, a term we must construe as 'broad' and 'ha[ving] an expansive meaning.'" (quoting *Ali,* 552 U.S. at 219)). The Supreme Court has therefore explained that where, as here, Congress "did not add any language limiting the breadth of [the] word," any "must" be read "as referring to all" of the type to which it refers. *Gonzales*, 520 U.S. at 5; see also *Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1186 (11th Cir.1997).   "Any" is an all encompassing term which contains no hint of an exception.  *Hutto v. Finney*, 437 U.S. 678, 694 (1978);  *Brooks v. United States*, 337 U.S. 49, 51 (1949); *Duffy v. Landberg*, 133 F.3d 1120, 1122-23 (8th Cir. 1998) ("any obligation" broad).  In other words,  the word "any" is as expansive as possible.

 "Any debts" is facially broader than, "debts owed or due or asserted to be owed or due another," which defines a subset containing less than all debts.  The "owed or due or asserted to be owed or due another" thus cannot be applied to "any debts."

      **C.**      **Both "Regular" Debt Collectors and "Principal Purpose" Debt Buyers Are Regulated By The FDCPA Because They Can Operate Without Regard to Any Need to Preserve Consumer Good Will**

The justification for treating third party debt collectors and persons primarily engaged in the purchase of debt as covered by the FDCPA, but persons who have substantial other businesses as not covered, is "good will." According to the legislative history of the FDCPA, creditors, "who generally are restrained by the desire to protect their good will when collecting past due accounts," are not covered by the FDCPA, but entities who may have "no future contact with the consumer and often are unconcerned with the consumer's opinion of them," are covered.  S. Rep. 95–382, at 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696.  *Aubert v. American General Finance, Inc.*, 137 F.3d 976, 978 (7th Cir.1998) ("Because creditors are generally presumed to restrain their abusive collection practices out of a desire to

protect their corporate goodwill," creditors who attempt to collect debts "in their own name and whose principal business is not debt collection ... are not subject to the [FDCPA].")

Neither third party collectors nor entities whose principal or sole business is the collection of debts have "good will" in that sense – they are simply interested in collecting and are not interested in getting business in the future from the consumer. The consumer is not their client at all. As one court explained:

> . . . The primary activity of an ordinary retailer (for example) is not the collection of debts, though it may regularly try to collect debts from its own customers. Such a company is constrained naturally in its debt collection activities with its own customers by concern over the effect of generating adversarial relationships. No such natural constraints exist if a company whose primary purpose is not debt collecting, such as a retailer, regularly collects debts for other companies, however, since any adversarial relationships stemming from debt collecting are generated with other companies' customers, and do not affect that company's primary activity. Furthermore, if a company's primary purpose is debt collection, then the natural constraints also do not apply, since that company's primary purpose is not dependent upon favorable relationships with customers. Thus, there are two situations where natural constraints do not protect against objectionable debt collection practices. The statutory definition of debt collector covered by the Act's prohibitions precisely identifies these two situations. . . .

*Little v. World Fin. Network, Inc.*, 89cv346, 1990 WL 516554, at *2–4 (D. Conn. July 26, 1990).

However, a company like Santander who is basically a credit grantor but acquires defaulted debts with sufficient frequency to meet the "regularly" test (which does not require that anything approaching 50% of its business to be collection of defaulted debts, see *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti, supra*, 374 F.3d 56 61 (2d Cir. 2004)) does have "good will" concerns, and does want to obtain business from consumers.

## VI. Defendants Have Offered No Evidence that the Decline in Their Net Worth is Related to Business Losses Rather Than an Attempt to Limit Liability Under the FDCPA

Defendants offer evidence, not tendered during discovery which is closed, that the net worth of Resurgent and Tate & Kirlin have declined and argue that their liability to the class is limited by their current net worth. Of course, defendants submitted no evidence to show whether the net worth declined because of bad business or because of large intra-company or partner payments made solely to reduce

8

FDCPA liability. Until evidence is offered, this Court should consider the higher net worth of each defendant.

As for the time when net worth must be determined, defendants concede that there is no case law in this jurisdiction. Instead they cite, in footnote 10, a district court case from Pennsylvania which states that it is "well-established" that net worth is calculated at the time of judgment. *Seawell v. Universal Fid. Corp,*, 2007 WL 1030544 (E.D.Pa. 2007). However, the case that *Seawell* relied upon, *Bonnett v. Educ. Debt Servs.*, 2003 WL 21658267, at *7, n. 4 (E.D.Pa. 2003), not only cited no other case to support its conclusion, but gave no analysis at all to support its choice of judgment as the time for determining net worth. The case hardly is a basis to show that the issue is well-established.

## VII.    Including LVNV's Net Worth is Not Stacking

To include the net worth of LVNV along with that of Resurgent is not "stacking." The assets of LVNV do not include Resurgent or Tate & Kirlin. Plaintiff is not asking for more than 1% of each debt collector or more than $500,000. *Janetos v. Fulton Friedman & Guillace*, No, 12 C 1473 (N.D. Ill. Dec. 15, 2016), 2016 WL 7240750 at *2. The Act contains a built in protection for each defendant, the 1% cap on net worth.

## VIII.   The 15 U.S.C. §1692k Factors Favor Plaintiff and the Class

Defendants admit that they sent  letters to class members here on time-barred debt without revealing that the debts were time-barred, without revealing that payment would revive the statute of limitations. They admit that these letters were sent after defendants were aware of the Goldsmith Study, after they were aware of the actions of the State of New Mexico and  New York City and after they were aware of the various 2009-2010 FTC Reports. Continuing to send out collection letters on time-barred debt was risky but lucrative. Defendants collected millions of dollars on time-barred debt, without disclosure that the debts were time-barred. (Answer to Interrogatory 30)(Exhibit A) They were also well

aware that if they informed the debtor that the debt was time-barred that they were less likely to collect any money. (Mitchell Stipulation Dkt #61)(<u>Exhibit B</u>)

But the defendants were not concerned about liability because they purported to insulate themselves from liability by organizing their debt collection business to have third parties send the letters, not review the practices of the worthless third parties, although they had the contractual right to do so, and placed the largest shares of their net worth in entities which they claimed were not debt collectors. There is also a question whether defendants deliberately reduced their net worth to limit their liability.

The statutory damages provisions in 15 U.S.C. §1692k regarding class actions require the trier of fact to consider "the frequency and persistence of noncompliance by the debt collector, the nature of such compliance, the number of persons adversely affected and the extent to which the noncompliance was intentional." Defendants' actions were frequent, persistent, intentional and numerous.

### A.  Number of persons adversely affected

This factor clearly favors plaintiff.  Defendants sent 148,491 letters to class members who actually paid the debt. To the extent this factor contemplates considering the number of times defendants sent a collection letter to a debtor on a time-barred debt without disclosing that the debt was time-barred or that payment would revive the statute of limitations, we know that defendants sent many more letters.  These are just the tip of the iceberg. Plaintiff here limited the class to those who paid, filed suit, or disputed or requested verification of the debt after receiving the collection letter at issue. There were many more persons in Illinois and Indiana who received the collection letter.

### B.  Frequency and Persistence of Noncompliance

This factor too favors plaintiff.

Defendants argue that the Court can only consider the action taken by defendants against plaintiff in determining the "frequency and persistence of noncompliance" factor of statutory damages in a class action, 15 U.S.C. §1692k(a)(2)(B) . Under this approach, defendants assert that Mr. McMahon received

10

only one letter, which, defendants suggest, is "hardly frequent or persistent conduct." *Id.* However, in the context of determining damages to a class under the FDCPA, the mass mailing of a violative letter falls within the scope of "frequency." *Hernandez v. Guglielmo*, 977 F. Supp.2d 1054, 105* (D.Nev 2013), noting that any other interpretation would take a mass mailing out of the frequency standard. *Hernandez* found that the statute "does not envision that no amount of liability should be found" in that situation. *Id.*

Defendants rely on a district court decision which does not address "frequency and persistence of noncompliance" in the context of a class action. Indeed, *Grubbs v. Andrews & Cox, P.C.*, No. 1:13-CV-1936-WTL-MJD, 2015 WL 5613325, at *3 (S.D. Ind. Sept. 22, 2015) relies on *Donnelly v. NCO Fin. Sys., Inc.*, 263 F.R.D. 500, 506 (N.D.Ill.2009) which expressly limits its analysis to individual statutory damages:"Courts in this jurisdiction have found that there is nothing in the clear language of the FDCPA which suggests that-in an individual action, as opposed to a class action- a court looks to a debt collector's practices regarding persons other than the plaintiff in determining the frequency and persistence of noncompliance."

Other courts have considered the debt collector's actions with respect to other debtors in determining the "frequency and persistence of noncompliance" even with respect to an individual case. *Riveria v. MAB Collections, Inc.*, 682 F.Supp. 174, 179 (W.D.N.Y. 1988) ("the validation clause appears in every debt collection letter sent out by [defendant]"); *Masuda v. MAB Collections, Inc.*, 682 F.Supp 174, 179 (W.D.N.Y. 1988)(in determining statutory damages in an individual case, court considered fact that attorney's signature appeared on numerous letters sent out without attorney involvement).

"Frequency and persistence of noncompliance" has been used in federal statutes as a factor in considering the appropriateness of civil penalties or criminal sanctions. For example, the phrase is included in the factors to be considered in the appropriateness of a civil penalty against a lender or guaranty agency for a violation, failure or misrepresentation in failing to comply with regulations

11

governing federally-insured student loans. 20 U.S.C. §1082(g)(6). If this factor is analyzed as a civil penalty, it does not make sense to limit it to the one letter sent to the plaintiff as defendants argue. It is more appropriately viewed as an analysis of the extent of the defendants' practices, a rap sheet, if you will.

### C.    Nature of the Noncompliance

This factor too favors plaintiff and the class.

Defendants minimize the effect of their violation by stating that they did not call after hours, use profanity or threaten harm. They argue that the effect of their action was not offensive or extreme.

However, the letter was sent to collect money from borrowers whose debts were out of statute. Defendants did not state that the debts were out of statute and what the consequences were of that status and the consequences of payment. Defendants collected millions of dollars from persons who could not be sued for the debt. They did not stop the practice as long as could get away with it.

### D.    Whether the Violation Was Intentional

Everything about the practices undertaken by defendants with respect to time-barred debt shows an intent to conceal from the debtors the time-barred status of their debts. As the Goldsmith Study shows, whether a consumer knows a debt is time barred is material to the question of whether they will use their limited resources to pay the stale debt instead of other expenses or debts. Defendants knew that because they collected less money from persons who were told that their debts were time barred than if they were not told. Defendants pay less for debts that are outside of the statute of limitations period than they pay for debts within the statute of limitations period. Stipulation (Mitchell Dkt No. 61)(Exhibit B). Defendants collects less from consumers on debts that are outside of the statute of limitations period than they collect from consumers on debts within the statute of limitations period. Stipulation (Mitchell Dkt No. 61)(Exhibit B).

12

Defendants' legal and compliance departments were well aware of the Goldsmith Study, after they were aware of the statutory actions of the State of New Mexico and the regulatory actions of New York City and after they were aware of the various 2009-2010 FTC Reports. They continued the practice in any jurisdiction where they were not expressly told to stop.

Defendants took the risk that a court would tell them that their practice violated the FDCPA. But they attempted to cover that risk by carefully segregating the entities that did the collections from the entities that contained net worth. The Seventh Circuit here and in *Janetos* caught defendants red-handed. Defendants are liable for their intentional acts.

## IX. Class Members Who Paid in Response to the Misleading Letter are Entitled to Get Their Money Back

Plaintiff incorporates §VI of his Response to Defendants' Motion for Summary Judgment (dkt. #255).

Furthermore, the Seventh Circuit noted in its opinion on class certification in this matter, that this Court concluded that actual damages in this case are capable of ministerial determination, causation must likewise be capable of ministerial determination. *McMahon v. LVNV Funding, LLC*, 807 F.3d 872, 876 (7th Cir. 2015) (*"McMahon II"*). Here, the debt collectors' records show when the debt was charged-off, when the letter was sent and when payments were made.

Defendants concede that class members paid after receiving defendants' letter. All of the debts were time-barred. This means that class members made payments after receiving the violative letter even though they had not made any payments for at least 5 years. Under *Vasquez*, the fact of reliance upon alleged false representations may be inferred from the circumstances attending the transactions which affords a stronger and more satisfactory evidence of the inducement. It is a reasonable inference that class members paid in response to the misrepresentations in the Letter.

13

Defendants may argue that they made phone calls in connection with the collection letter. It is a fair inference that defendants did not orally inform class members that their debts were time-barred and if they made a partial payment they risked restarting the statute of limitations. The fact that phone calls were made omitting the material fact that the debts were time-barred does not defeat causation. The essence of the violation here is that defendant conveyed to class members that their debts were legally enforceable and payments were made after the misrepresentation.

Defendants attempt to impose a burden on plaintiff to show that each class member perceived the letter as a threat to sue. That is not the test. This is an omission case. The class members' actions in paying after they receive a collection letter where they had not paid for years is evidence that they believed that debt was legally enforceable. Under *Vasquez*, conduct is more probative than testimony. Debtors, when approached by a creditor seeking payment, have to make this kind of decision: With my scarce resources, should I pay this debt or should I pay my utility bill or my rent or my child's school fees. A debtor, when deciding how to allocate scarce resources among many debts, will treat differently a debt that is legally enforceable from one not immediately pressing.

Defendants have segregated the amounts paid after August 1, 2012, when defendants started disclosing debts as being time-barred, from payments made before. As the Seventh Circuit noted, Rule 23(c)(4) permits the determination of damages, once liability is determined, of "homogeneous groups of class members." *Id.* Surely it's a fair inference that those who paid after the letter but without a disclosure paid as a result of the omission. It's a fair inference that those who began a paying before the disclosure, and who continued after the disclosure, were affected by the omission. There is also a question whether defendants actually made the disclosure to those class members who made payments, since the payments revived the statute of limitations as to those class members. Further, the analysis changes once the debtor has began making payments, since he has undertaken to pay the debt. The undertaking made was without

14

the debtor having knowledge of material information. The continued payments are tainted, especially since the statute of limitations is revived by the payments.

Finally, the disclosure stated "The law limits how long you can be sued on a debt. Because of the age of your debt, LVNV will not sue you for it and LVNV will not report it to a credit reporting agency." It did not state that if you make a payment, the statute of limitations starts up again and you can be sued. Under *Pantoja*, the disclosure is inadequate. Persons who made payments are still entitled to get their money back.

In any event, *McMahon II* stated:

It is well established that, if a case requires determinations of individual issues of causation and damages, a court may "bifurcate the case into a liability phase and a damages phase." Mullins, 795 F.3d at 671; see Butler v. Sears, Roebuck & Co., 727 F.3d 796, 800 (7th Cir.2013) ("[A] class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogeneous groups of class members, is permitted by Rule 23(c)(4) and will often be the sensible way to proceed."), cert. denied, ––– U.S. ––––, 134 S.Ct. 1277, 188 L.Ed.2d 298 (2014).

807 F.3d at 876. If this Court wishes to receive evidence from class members addressing the question of whether if they had known the debt was time-barred and that partial payment would re-start the statute of limitations, would they have paid, the evidence could be solicited by sending notice with a claim form or by sending notice with a returnable request for a hearing. Since distribution of any statutory damages would require notice to be sent to class members, the request could be incorporated into the notice of statutory damages.

## X.    CONCLUSION

For the foregoing reasons, plaintiff respectfully urges the Court to grant plaintiff's motion for summary judgment on liability and deny defendants' cross motion for summary judgment on liability and enter judgment in the amount of for statutory damages and refund as actual damages the amounts paid by class members after receipt of the violative letter.

15

Respectfully,

s/Tiffany N. Hardy
Tiffany N. Hardy

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## CERTIFICATE OF SERVICE

      I, Tiffany N. Hardy, certify that on July 18, 2017, a true and accurate copy of the foregoing document was filed via the Court's CM/ECF system, and notification of such filing was sent to all counsel of record.


                                 s/Tiffany N. Hardy
                                 Tiffany N. Hardy


Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)