**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **SCOTT MCMAHON, on behalf of plaintiff and the classes defined herein,** | ) ) ) | |
| **Plaintiff,** | ) ) | **No. 12 C 1410** |
| **v.** | ) ) | **Judge Jorge Alonso** |
| **LVNV FUNDING, LLC, RESURGENT CAPITAL SERVICES, L.P., ALEGIS GROUP, LLC, and TATE & KIRLIN ASSOCIATES, INC.,** | ) ) ) ) ) ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Scott McMahon, brings this case under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*, against defendants LVNV Funding, LLC ("LVNV"), Resurgent Capital Services, L.P. ("Resurgent"), Alegis Group, LLC ("Alegis"), and Tate & Kirlin Associates, Inc. ("Tate & Kirlin"). The case is before the Court on the parties' cross-motions for summary judgment, defendant's motion to bar plaintiff's expert from testifying, and and plaintiff's motion to strike. For the following reasons, plaintiff's motion for summary judgment is granted in part and denied in part; defendants' motion for summary judgment is denied; defendants' motion to exclude plaintiff's expert's testimony is granted; and plaintiff's motion to strike is denied.

## BACKGROUND

In December 2011, plaintiff received a letter, dated December 19, 2011, from Tate & Kirlin seeking to collect a debt of $584.98 originally owed to Nicor Gas. (Defs.' Resp. to Pl.'s LR 56.1 Stmt. ¶¶ 30-32, ECF No. 259.) The letter offered "**An Opportunity**: We are pleased to

extend to you an offer to settle your account in full for $233.99. This represents a savings of 60% off your balance." (*Id.* ¶ 33.)

On December 29, 2011, plaintiff sent a letter in response, in which he requested that Tate & Kirlin verify the debt so that "we can settle this quickly." (*Id.* ¶ 34; *see* 2d Am. Compl. Ex. B.) Plaintiff received a reply letter from Resurgent, dated January 13, 2012, informing him that "this account has been placed with Resurgent Capital Services L.P.," and enclosing a separate typewritten page titled "Validation of Debt," dated January 12, 2012, which stated: "LVNV Funding LLC currently owns [this debt]. The account was previously sold by Nicor Gas on or about 09-23-2011 and at that time the balance on this account was $584.98." (Defs.' Resp. to Pl.'s LR 56.1 Stmt. ¶¶ 35-36.) Although the letter did not mention it, plaintiff last made a payment on the debt to Nicor Gas in 1997, and the debt was charged off in 1998. (*Id.* ¶ 32.) Nothing in the December 19, 2011 or January 13, 2012 communications mentioned the statute of limitations or disclosed whether it would bar any legal action to collect the debt in 2012. (*Id.* ¶ 38.)

LVNV is in the business of acquiring defaulted consumer debt originally owed to others, including creditors such as banks, finance companies, and other debt buyers. (*Id.* ¶¶ 8-9.) LVNV outsources the collection of the debt it purchases to Resurgent, which serves as its master servicing agent and holds limited power of attorney to manage and work LVNV's debt inventory. (*Id.* ¶¶ 10-11, 13.) Resurgent operates as a collection agency for some of the accounts for which it acts as a master servicer, and refers other accounts to other collection agencies and law firm. (*Id.* ¶¶ 14-15.) Alegis is Resurgent's general partner. (*Id.* ¶ 4.) Resurgent calculates the applicable statute of limitations period on all of its accounts before referring them to an outside collector. (*Id.* ¶ 21.) Resurgent retained collection agency Tate &

Kirlin for the purpose of collecting debt owed to its clients. (*Id.* ¶¶ 19, 24.) Tate & Kirlin was authorized to make settlement offers to debtors. (*Id.* ¶ 26.)

Although aware that the statute of limitations on the debt had expired, Resurgent placed plaintiff's debt with Tate & Kirlin. (*Id.* ¶¶ 28-29, 43.) The above-described correspondence ensued, and in February 2012, plaintiff brought this lawsuit.

Plaintiff asserts that the correspondence he received concerning his debt to Nicor Gas was deceptive and defendants are responsible for the use of unfair or deceptive means of collecting that debt, in violation of the FDCPA. This Court initially denied class certification, but the Seventh Circuit reversed and remanded the case. 807 F.3d 872 (7th Cir. 2015) ("*McMahon II*"). On remand, the Court certified and approved notice to the following class:

> (a) all individuals in Illinois (b) to whom LVNV, Resurgent or any debt collector employed by LVNV or Resurgent (c) sent a letter seeking to collect a debt that referred to a "settlement" (d) which debt was (i) a credit card debt on which the last payment had been made more than five years prior to the letter, or (ii) a debt arising out of the sale of goods (including gas) on which the last payment had been made more than four years prior to the letter (e) which letter was sent on or after February 28, 2011 and on or before March 19, 2012, (f) where the individual after receipt of the letter, (i) made a payment, (ii) filed suit, or (iii) responded by requesting verification or contesting the debt.

(Defs.' Resp. to Pl.'s LR 56.1 Stmt. ¶ 54.) The parties now move for summary judgment.

## DISCUSSION

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wackett v. City of Beaver Dam*, 642 F.3d 578, 581 (7th Cir. 2011). The Court may not weigh conflicting evidence or make credibility determinations, but the party opposing summary judgment must point to competent evidence that would be admissible at trial to demonstrate a genuine dispute of material fact. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629

F.3d 697, 705 (7th Cir. 2011); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009); *see Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013) (court must enter summary judgment against a party who "'does not come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question'") (quoting *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)). A genuine dispute is one that could change the outcome of the suit, and is supported by evidence sufficient to allow a reasonable jury to return a favorable verdict for the non-moving party. *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010).

The FDCPA was enacted "to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) (citing 15 U.S.C. § 1692(e)). Under the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The statute specifically enumerates "[t]he false representation of . . . the character, amount, or legal status of any debt," "the threat to take any action that cannot legally be taken or that is not intended to be taken," and "the use of any false representation or deceptive means to collect or attempt to collect any debt" as conduct that violates § 1692e. 15 U.S.C. § 1692e(2), (5), (10). Additionally, 15 U.S.C. § 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect a debt." Both § 1692e and § 1692f apply only to the conduct of a "debt collector," which the FDCPA defines as "any person . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to

collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

A plaintiff who prevails on an FDCPA claim is entitled to "(1) any actual damage sustained by such person as a result of [a debt collector's failure to comply with the FDCPA]," as well as statutory damages as follows:

> (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or
> (B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector.

15 U.S.C. § 1692k(a). In determining the amount of statutory damages to award, "the court shall consider, among other relevant factors . . . the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1).

In his motion for summary judgment, plaintiff contends that the letter he received from Tate & Kirlin (hereafter, "the McMahon letter") violates the FDCPA on its face as a matter of law. Even if the letter does not violate the FDCPA on its face, according to plaintiff, it still violates the FDCPA as a matter of law based on extrinsic evidence, including the opinion of plaintiff's expert witness, Timothy Goldsmith, and research conducted by government agencies such as the FTC and CFPB. Additionally, plaintiff argues, all defendants are responsible for the violation, either vicariously or based on their own actions. Finally, plaintiff argues that the class members are entitled to statutory damages as well as actual damages of any amounts paid after receiving defendants' deceptive dunning letters.

Defendants respond, and move for summary judgment in their favor, by arguing that the McMahon letter does not violate the FDCPA as a matter of law. At worst, according to defendants, it falls within the category of communications that must be proved deceptive with extrinsic evidence—but, defendants argue, plaintiff's extrinsic evidence of deceptiveness is insufficient because the expert testimony he proffers is inadmissible under the *Daubert* standard and the government agency reports are too general to support a claim that any particular communication is misleading. Further, defendants argue that the evidence is insufficient to show that letters such as the McMahon letter, even if deceptive in some sense, either (a) are materially deceptive for purposes of an FDCPA claim, (b) cause an injury-in-fact sufficient to confer Article III standing on the recipients, or (c) have actually caused any recipient to make any payments on time-barred debt such that an award of actual damages is appropriate in this case. Finally, LVNV argues that it is entitled to summary judgment, separate and apart from the other defendants, because under the United States Supreme Court's recent decision in *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721–25 (2017), it is not a "debt collector" under the FDCPA because it does not collect debt owed to other entities; it contracts with other entities who collect for LVNV the debt that LVNV itself owns.

## I. WHETHER THE MCMAHON LETTER IS DECEPTIVE AS A MATTER OF LAW

### A. Relevant Case Law

In the first of the two opinions it has issued in this case, the Seventh Circuit explained the relevant standard for determining whether a dunning letter is unfair, deceptive, or misleading under the FDCPA:

> The court views the letter through the perspective of an "unsophisticated consumer." *Lox v. CDA, Ltd.,* 689 F.3d 818, 822 (7th Cir. 2012). This standard

applies to claims under both § 1692e and § 1692f. *Turner v. J.V.D.B. & Assoc., Inc.,* 330 F.3d 991, 997 (7th Cir. 2003).

Whether a dunning letter is confusing is a question of fact. *Evory* [*v. RJM Acquisitions Funding, LLC*, 505 F.3d 769, 776 (7th Cir. 2007)]. Dismissal is appropriate only when "it is 'apparent from a reading of the letter that not even a significant fraction of the population would be misled by it.'" *Zemeckis v. Global Credit & Collection Corp.,* 679 F.3d 632, 636 (7th Cir. 2012) (quoting *Taylor v. Cavalry Inv., L.L.C.,* 365 F.3d 572, 574 (7th Cir. 2004)). "[A] letter may confuse even though it is not internally contradictory. Unsophisticated readers may require more explanation than do federal judges; what seems pellucid to a judge, a legally sophisticated reader, may be opaque to someone whose formal education ended after sixth grade." *Johnson v. Revenue Mgmt. Corp.,* 169 F.3d 1057, 1060 (7th Cir. 1999). Recognizing the distinction between what may confuse a federal judge and an unsophisticated consumer is important because the intended recipients of dunning letters span the entire range of abilities. We have therefore cautioned against reliance "on our intuitions." *Evory,* 505 F.3d at 776.

*McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1019-20 (7th Cir. 2014) ("*McMahon I*").

Under that standard, the court explained, plaintiff stated a claim under the FDCPA based on the language in the McMahon letter conveying an "offer" to "settle" with him.   *Id.* at 1020.  "A gullible consumer" who accepted the offer, essentially making a partial payment, would probably not know that by doing so she might "inadvertently . . . reset the limitations period and make herself vulnerable to a suit on the full amount." *Id.* at 1021.  Further, the letter might mislead an unsophisticated consumer, for whom an "offer" to "settle" might have an exclusively legal resonance, to believe that accepting the offer was her "chance to avoid court proceedings where [she] would be defenseless" because "the debt [was] legally enforceable." *Id.* at 1022.  This Court had dismissed the class allegations in plaintiff's original complaint, concluding that the language in the McMahon letter was not misleading because, although the letter sought to collect a time-barred debt, it did not actually threaten to file a time-barred action.  (*See* Mem. Op., ECF No. 44, at 4.)  But because "an unsophisticated consumer could be misled by a dunning letter for

a time-barred debt, especially a letter that uses the term 'settle' or 'settlement,'" the Seventh

Circuit reversed.[1]

More recently, in *Pantoja v. Portfolio Recovery Associates, LLC*, 852 F.3d 679 (7th Cir.

2017), the Seventh Circuit addressed whether a similar dunning letter violated the FDCPA as a

matter of law. In *Pantoja*, the letter read as follows:

> **We are offering to settle this account FOR GOOD!** Life happens and at times
> you may fall behind on your commitments. We understand and are offering you
> the opportunity to lock in this settlement offer with a low down payment of
> $60.00. If settling this account with the options that we are offering is difficult for
> you, give us a call.
> ***Other payment options may be available so please call 1-800-772-1413 for more
> information.***
> Please understand, we can't help you resolve this debt if you don't call, our
> friendly representatives are waiting. <u>Because of the age of your debt, we will not
> sue you for it and we will not report it to any credit reporting agency.</u>

*Id.* at 682 (underlined emphasis added). The court held that this letter was deceptive under the

FDCPA as a matter of law for two independent reasons, either of which alone was sufficient to

support judgment for the plaintiff: (1) the letter failed to warn the plaintiff that if he accepted any

settlement offer, whether by making a partial payment or agreeing to make a payment, he

"risk[ed] loss of the otherwise ironclad protection of the statute of limitations"; and (2) it

---

[1] The Seventh Circuit did not address how the Resurgent validation letter played into plaintiff's claim specifically, but it held that plaintiff stated a class action claim under the FDCPA based on the McMahon letter alone, regardless of whether class members also received similar validation letters from Resurgent. Defendants briefly argue that the Resurgent validation letter is outside the scope of the FDCPA because it is not a "communication" seeking to collect a debt; it merely provides information. The argument is meritless. 15 U.S.C. § 1692e generally applies to "any false, deceptive, or misleading representation or means in connection with the collection of any debt"; it is not limited to "communications," nor does the word "communication" appear in subsections (2), (5), or (10) of § 1692e, which in any case "do not limit the general application" of § 1692e. To fall within the scope of § 1692e and its relevant subsections, the Resurgent letter need only have been sent "in connection with the collection of any debt." The Resurgent validation letter was sent in response to the December 29, 2011 inquiry plaintiff made after receiving the McMahon letter, which explicitly stated that it was "an attempt to collect a debt." (2d Am. Compl. Ex. A.) It was plainly sent "in connection with the collection of any debt," and the cases defendants have cited are not to the contrary; indeed, they are all inapposite because they deal with sections or subsections of FDCPA that are irrelevant here. (*See* Defs.' Mem. at 18-19, ECF No. 236; Defs.' Reply Br. at 9, ECF No. 268.)

deceptively suggested that the debt collector had *chosen* not to sue the plaintiff for the debt in question, rather than explaining that the debt was so old that any action to collect it was barred by the statute of limitations. *Id.* at 682-83, 684.

With respect to the first reason, the Seventh Circuit recognized that there was some "room for disagreement about the precise scope of Illinois law" as it might apply to an action to collect the entire debt if plaintiff made a partial payment on it by accepting the debt collector's "offer" to "settle." *Id.* at 685. For example, there was room to dispute which statute of limitations applied, the ten-year statute of 735 ILCS 5/13-206 applicable to written contracts, or the five-year statute of 735 ILCS 5/13-205, which, unlike section 13-206, does not explicitly state that a partial payment or new promise to pay restarts the limitations period. But "Illinois courts hold that a new promise to pay will also start a new five-year clock under this statute," *id.* at 685 (citing cases), and regardless of issues such as "which statute applies, whether the new promise to pay must be explicit or may be implied, [or] whether the new promise to pay must be in writing," the very fact that there was uncertainty about how Illinois law applied meant that making a "partial payment or new promise to pay . . . would have put [plaintiff] in a much worse legal position than he would have been in before taking the step," because "[b]efore he received defendant's letter, he had an absolute defense to any possible collection suit." *Id.* According to the Seventh Circuit, "the FDCPA prohibits a debt collector from luring debtors away from the shelter of the statute of limitations without providing an unambiguous warning that an unsophisticated consumer would understand." *Id.*

As for the second reason, the court focused on one particular sentence in the letter: "Because of the age of your debt, we will not sue you for it and we will not report it to any credit reporting agency." According to the Seventh Circuit, this language "'could well [have]

confuse[d] a good number of recipients,'" as to whether the defendant had a legally enforceable claim that it was *choosing* not to assert for the time being, rather than a claim it had run out of time to assert. *Id.* at 686 (quoting *Williams v. OSI Educ. Servs., Inc.*, 505 F.3d 675, 678 (7th Cir. 2007)). The defendant argued that judgment as a matter of law was nevertheless inappropriate because, while perhaps the letter might have confused some recipients, it might not have confused others, so extrinsic evidence was needed to determine whether the letter was actually confusing to the unsophisticated but reasonably intelligent consumer. *Id.* at 686; *see Williams*, 505 F.3d at 678 ("The unsophisticated consumer is uninformed, naive, and trusting, but possesses rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses reasonable intelligence, and is capable of making basic logical deductions and inferences.") (internal quotation and alteration marks omitted). The Seventh Circuit rejected this argument, explaining that "[w]here the FDCPA requires clarity, . . . ambiguity itself can prove a violation." *Id.* at 687. Because the letter was "an example of careful and deliberate ambiguity" fashioned in "the expectation that at least some unsophisticated debtors will misunderstand and will choose to pay on the ancient, time-barred debts because they fear the consequences of not doing so," it violated the FDCPA as a matter of law. *Id.* In other words, "the very ambiguity that [the defendant claimed] should save it from summary judgment convince[d the Seventh Circuit] that summary judgment [was] appropriate." *Id.*

Against this backdrop of case law, plaintiff argues that the McMahon letter is deceptive as a matter of law, but defendants argue that extrinsic evidence is necessary to prove plaintiff's claim. According to defendants, the Seventh Circuit did not hold in *McMahon I* that the McMahon letter, which was silent with respect to the statute of limitations, violated the FDCPA as a matter of law, and this case is unlike *Pantoja* because the McMahon letter does not contain

the "because of the age of your debt, we will not sue you for it" language. *McMahon I* and *Pantoja* require this Court to side with plaintiff and rule that the McMahon letter is deceptive as a matter of law.

**B. The McMahon Letter Is Misleading Because It Does Not Make Clear That The Law Prevents Defendants From Suing On The Nicor Gas Debt**

*Pantoja* held that a letter offering to settle a time-barred debt for a fraction of the original amount and stating, "Because of the age of your debt, we will not sue you for it," violates the FDCPA because it does not "make clear to the recipient that the law prohibits the collector from suing to collect [such an] old debt." *Id.* at 684. Based on a straightforward application of that holding to this case, the McMahon letter is deceptive as a matter of law because the McMahon letter does not contain any unambiguous warning about the possibility of losing the protection of the statute of limitations by accepting the "offer" to "settle."

Defendants argue that, given that the McMahon letter does not contain the "because of the age of your debt . . ." language and is silent as to the statute of limitations, *Pantoja* is not sufficiently analogous to this case to support the conclusion that the McMahon letter is deceptive as a matter of law. But no other conclusion is possible when the Court considers the holding of *Pantoja* alongside the Seventh Circuit's analysis of the McMahon letter in *McMahon I*. Under *McMahon I*, the "offer" to "settle" language is ambiguous in essentially the same way as the "because of the age of your debt" language in *Pantoja*: it "implies that the creditor could successfully sue on the debt," and it has the potential to mislead consumers to believe that "the settlement offer is their chance to avoid court proceedings where they would be defenseless, or . . . that the debt is legally enforceable at all." 744 F.3d at 1022.

Under *Pantoja*, "[w]here the FDCPA requires clarity, . . . ambiguity itself can prove a violation" as a matter of law. 852 F.3d at 687. Critically, the plaintiff prevailed in that case

because the letter was ambiguous so as to deceive at least some unsophisticated consumers to believe that they would be defenseless in a legal action to collect the debt. *Id.* The McMahon letter is ambiguous in a similar way, so it too is deceptive under the FDCPA as a matter of law.

Defendants make too much of the fact that the Seventh Circuit did not hold in *McMahon I* that the McMahon letter is deceptive as a matter of law. The court had no occasion to do so in that opinion because, at that point, this case was still at the pleading stage. The question facing the Seventh Circuit in *McMahon I* was simply whether plaintiff's class allegations stated a claim based on the McMahon letter. What is important about that decision for present purposes is that it explained that a letter that made an "offer" to "settle" a time-barred debt might mislead an unsophisticated consumer, who might interpret an "offer" to "settle" as a legal term describing an opportunity to forestall a collection lawsuit in which the consumer believed he would be "defenseless." *See McMahon I*, 744 F.3d at 1022.

It is clear from *McMahon I* that the McMahon letter's "offer" to "settle" language carries the very sort of calculated ambiguity that *Pantoja* held to be deceptive as a matter of law. A number of district court decisions have reasoned similarly. *See, e.g., Slick v. Portfolio Recovery Assocs., LLC*, 111 F. Supp. 3d 900, 906-07 (N.D. Ill. 2015) (relying on *McMahon I* and the district court decision in *Pantoja*, 8 F. Supp. 3d 743, 746 (N.D. Ill. 2015) *aff'd*, 852 F.3d 679 (7th Cir. 2017), to hold that a letter that offered to settle a debt but was silent as to the statute of limitations was misleading as a matter of law, without the need for extrinsic evidence); *Rawson v. Source Receivables Mgmt., LLC*, 215 F. Supp. 3d 684, 688-89 (N.D. Ill. 2016) (same, citing *Slick*). The McMahon letter is deceptive as a matter of law, and no extrinsic evidence is necessary to prove as much.[2]

---

[2] Among the extrinsic evidence the parties have submitted is an affidavit from Andrea Hammond, a Resurgent employee, which provides information establishing (at least from defendants' point of view)

**C. The McMahon Letter Is Misleading Because It Does Not Make Clear That A Partial Payment Or New Promise To Pay May Cost The Recipient The Protection Of The Statute Of Limitations**

Defendants also argue that *Pantoja* is distinguishable because accepting the settlement offer would not necessarily have put plaintiff "in a much worse legal position than he would have been in before taking [that] step," *see id.* at 685, because neither 735 ILCS 5/13-206 nor 735 ILCS 5/13-205, the two statutes of limitations that the court mentioned in *Pantoja*, apply to plaintiff's debt. Rather, defendants argue, the four-year statute of limitation in 810 ILCS 5/2-725 is applicable.

Having already concluded that the letter was deceptive on the independently sufficient ground that it did not "make clear to the recipient that the law prohibits the collector from suing to collect this old debt," *Pantoja*, 852 F.3d at 684, the Court need not address this alternative argument. But even if it were necessary to consider it, the Court would reject it. First, the Court fails to see how the potential applicability of the four-year statute of limitations distinguishes this case from *Pantoja*. Like 735 ILCS 5/13-205, and unlike 735 ILCS 5/13-206, 810 ILCS 5/2-725 does not explicitly provide that a partial payment or new promise to pay restarts the limitations period, but defendants do not establish, nor does the Court see, that it is any less true under 810 ILCS 5/2-725 that a partial payment or new promise to pay would put plaintiff in a "much worse legal position" by at least clouding the issue of whether plaintiff had an "absolute defense." *Pantoja*, 852 F.3d at 685; *see* 3 Richard A. Michael, *Illinois Practice*: *Civil Procedure Before*

---

that Resurgent received more payments on out-of-statute debt *after* it began requiring its collection agencies to disclose in their letters that the statute of limitations on the debt had run. Plaintiff moves to strike this affidavit, claiming that it contradicts defendants' stipulation that aggregate amounts recovered on debts outside the statute of limitations for a collection suit are generally lower than aggregate amounts recovered on debts within the statute of limitations. But the affidavit does not directly contradict the stipulation, and in any case it is immaterial because the Court has concluded that no extrinsic evidence is necessary to show that the McMahon letter is deceptive and misleading, so the motion to strike [256] is denied.

*Trial* § 16:2 (2d ed. 2010) ("While this provision [that a payment or new promise to pay restarts the limitations period] is contained in the section pertaining to the 10-year period for written contracts, its principles have been held to apply to all contract actions, debts, and judgments.").

As in *Pantoja*, "the letter does not even hint, let alone make clear to the recipient, that if he makes a partial payment or even just a promise to make a partial payment, he risks loss of the otherwise ironclad protection of the statute of limitations." 852 F.3d at 684. Nothing in *Pantoja* limited this requirement to a letter that specifically mentioned "the age of [the] debt" or whether the debt collector might "sue . . . for it"; it is unclear whether that language was even a factor in the court's analysis of the issue of resetting the limitations period (as opposed to the independent issue of warning that it had elapsed, in which it certainly was a factor). *Id.* at 682. Further, the Seventh Circuit suggested in *McMahon I* that it was potentially misleading to "offer" to "settle" a time-barred debt, when doing so might cause a consumer to make a partial payment that might reset the statute of limitations. 744 F.3d at 1021. Other district courts have concluded that a letter that attempts to collect a time-barred debt while remaining entirely silent as to the statute of limitations is misleading under the FDCPA because it "lur[es] debtors away from the shelter of the statute of limitations without providing an unambiguous warning that an unsophisticated consumer would understand," *id.* at 685. *See, e.g., Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523, 2017 WL 4303804, at *6-7 (N.D. Ind. Sept. 28, 2017), *order vacated in part on reconsideration on other grounds*, 2017 WL 6406594 (N.D. Ind. Dec. 15, 2017); *Magee v. Portfolio Recovery Assocs., LLC*, No. 12 C 1624, 2016 WL 2644763, at *4 (N.D. Ill. May 9, 2016) (relying on district court decision in *Pantoja*, 78 F. Supp. 3d 743, 746 (N.D. Ill. 2015))).

This Court agrees with these decisions.[3]  For this independent reason, the McMahon letter is deceptive as a matter of law.  No extrinsic evidence is necessary to prove as much.

Because the Court has no need to consider extrinsic evidence, the Court grants defendants' *Daubert* motion to bar the testimony of plaintiff's expert Timothy Goldsmith. Goldsmith's testimony is directed to whether letters such as the McMahon letter are misleading, but the Court has already determined that they are misleading as a matter of law, so Goldsmith's testimony would not aid the trier of fact to determine any fact in issue.

## II.    MATERIALITY AND DAMAGES

Defendants argue that, even if the McMahon letter is deceptive, the Court must grant defendant's motion for summary judgment, or at least deny plaintiff's, for three independent reasons.

### A.  Materiality Of The Misrepresentation

Defendants argue that plaintiffs have not shown that any misrepresentations in the McMahon letter were material to payment.  The Seventh Circuit has recently explained § 1692e's implicit materiality requirement as follows:

---

[3] Defendants argue briefly that they are entitled to judgment on plaintiff's § 1692f claim because it is merely "boilerplate" and plaintiffs have not demonstrated a "separate factual basis" for any claim that the McMahon letter and like communications are "unfair or unsconcionable," in addition to being "deceptive" or "misleading" in violation of 15 U.S.C. § 1692e.  Even if there is any distinction to be made between "unfair" and "deceptive" conduct in the circumstances of this case, it makes no difference because the Court concludes that letters such as the McMahon letter violate § 1692e, so whether they violate the FDCPA under a different theory of liability is merely academic.  Additionally, while it is true that plaintiffs do not specifically explain why the evidence demonstrates that defendants violated § 1692f, neither do defendants demonstrate why it does not, and the Court fails to see it should not consider letters such as the McMahon letter to be both a "misleading representation or means" used "in connection with the collection of any debt" under § 1692e and an "unfair . . . means to . . . attempt to collect [a] debt" under § 1692f.  *See Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1261 (11th Cir. 2014), *distinguished on other grounds by Owens v. LVNV Funding, LLC*, 832 F.3d 726, 736 (7th Cir. 2016). Notably, the Seventh Circuit in *Pantoja*, 852 F.3d at 684, 687, affirmed the district court's grant of summary judgment, which it had entered on claims brought under both § 1692e and § 1692f, without making any such distinction.  This Court follows suit.  *See Mitchell*, 2017 WL 4303804, at *7-8.

> [Section] 1692e is "designed to provide information that helps consumers to choose intelligently, and by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect)." *Hahn v. Triumph P'ships, LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009). Portions of § 1692e are drafted in broad terms, prohibiting the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." For such claims, we must assess allegedly false or misleading statements to determine whether they could have any practical impact on a consumer's rights or decision-making process—that is, whether they represent the kind of conduct the Act was intended to eliminate.

*Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 (7th Cir. 2016). Put succinctly, a material misrepresentation is one that "has 'the ability to influence a *consumer's* decision.'" *Lox v. CDA, Ltd.*, 689 F.3d 818, 826 (7th Cir. 2012) (quoting *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 942 (7th Cir. 2011) (emphasis in original)).

Defendants appear to conflate materiality and causation of actual damages (which the Court will address below). (*See* Defs.' Reply Br. at 2-3, ECF No. 268.) To demonstrate that the McMahon letter is materially misleading, *i.e.*, that it misleads in a way that the FDCPA is intended to prevent because it has the ability to influence a consumer's decision, it is not necessary for plaintiff to prove that it actually caused him (or a class member) to make a payment to defendants. A misrepresentation is material if it has the ability, *i.e.*, the potential, to influence a consumer's payment decision. *Compare Hahn*, 557 F.3d at 757-58 (misrepresentation of how much of debt was interest and how much principal was immaterial because a "dollar due is a dollar due") *with Lox*, 689 F.3d at 826-27 (misrepresentations concerning whether debtor might be responsible for paying debt collector's attorney fees if it were forced to bring a collection suit were "materially false and misleading on their face," irrespective of any extrinsic evidence or even evidence that the plaintiff actually believed them). In this case, defendants deceptively implied that they were generously extending plaintiff an offer to settle his debt, although in fact there was nothing generous about it because the time for

enforcing their rights by filing a collection suit had elapsed. This is a materially misleading misrepresentation. *See Magee*, 2016 WL 2644763, at *4-5 (finding similar language in a debt-collection letter to be materially false and misleading).

### B. Article III Standing and Statutory Damages

Defendants argue that, particularly in light of the United States Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548-49 (2016), plaintiff McMahon has not shown that he has suffered a sufficiently concrete injury to prevail on his FDCPA claim, given that he did not pay the debt. The FDCPA violation he has identified, defendants argue, is no more than a "bare procedural violation." *Id.* at 1550. Further, defendants argue that any class member who seeks merely statutory damages, rather than actual damages, because he did not actually make a payment after receiving correspondence from defendants similarly has not suffered a sufficiently concrete injury to satisfy Article III standing requirements.

Another court of this district has already rejected this argument in a virtually identical context. *Pierre v. Midland Credit Mgmt., Inc.*, No. 16 C 2895, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017). In that case, the district court explained that the Seventh Circuit has long held that a plaintiff in an FDCPA case "has Article III standing" to seek statutory damages "based *solely* on . . . receiving allegedly unlawful debt collection demands." *Id.* (citing *Keele v. Wexler*, 149 F.3d 589, 593 (7th Cir. 1998) ("The FDCPA does not require proof of actual damages as a precursor to the recovery of statutory damages.") and *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1083 (7th Cir. 2013) ("Proof of injury is not required when the only damages sought are statutory.")); *see also McMahon II*, 807 F.3d at 876. *Spokeo* does not alter these decisions. *Pierre*, 2017 WL 1427070, at *4 ("*Spokeo* does not sweep so widely as to overrule Seventh Circuit decisions affirming the power of Congress to enact statutes creating

legal rights, the invasion of which confers standing even though no injury would exist without the statute.") (internal quotation marks omitted); *see Aguirre v. Absolute Resolutions Corp.*, No. 15 C 11111, 2017 4280957, at *4 (N.D. Ill. Sept. 27, 2017) ("*Spokeo* does not indiscriminately sweep aside all the legal rights created by Congress that confer standing where no injury would otherwise exist."). In *Spokeo*, posting inaccurate personal information about the plaintiff on a consumer website may have been a "bare procedural violation" of the Fair Credit Reporting Act, but "sending a misleading dunning letter that sought payment on a time-barred debt and lacked disclosures to which [the debtor] was legally entitled" inflicts exactly the sort of injury Congress sought to prevent by giving consumers, in the FDCPA, "'a legally protected interest in certain information about debts'" and making "'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" *Pierre*, 2017 WL 1427070, at *4.

Defendants cite some contrary out-of-circuit decisions (Defs.' Reply Br. at 12, ECF No. 268), but these decisions are not convincing, particularly considering that decisions of district courts within the Seventh Circuit have been virtually uniform in rejecting defendants' position. *See Aguirre*, 2017 4280957, at *4 ("Over the last year and half, more than a dozen cases within this Circuit have recognized the differences between the claims in *Spokeo, Meyers* [*v. Nicolet Restaurant of DePere, LLC*, 843 F.3d 724, 727 (7th Cir. 2016)], and *Gubala* [*v. Time Warner Cable, Inc.*, 846 F.3d 909, 910 (7th Cir. 2017)], and those alleged in FDCPA claims like those brought [in this case]. In every instance, the courts have concluded that plaintiffs claiming intangible injuries from allegedly predatory debt collection practices do in fact have Article III standing to sue for statutory damages under the FDCPA.") (citing cases); *Haddad v. Midland Funding, LLC*, 255 F. Supp. 3d 735, 739-40 (N.D. Ill. 2017) ("The value of receiving truthful

information about one's financial affairs—and the ill effects of receiving misleading information—may be hard to quantify, especially where, as here, the plaintiff did not act upon the misinformation. But being lied to in violation of an anti-trickery statute like the FDCPA is a concrete harm nevertheless.").  Plaintiff and similarly situated class members have Article III standing to seek statutory damages in this case.

Plaintiff requests the Court to award statutory damages, but the Court is unable to go that far at the summary judgment stage.  The Seventh Circuit has held that "the FDCPA provides for trial by jury in determining statutory . . . damages."  *Kobs v. Arrow Serv. Bureau, Inc.*, 134 F.3d 893, 896–99 (7th Cir. 1998).  Even if there were no disputed facts, the need to exercise discretion in determining the amount of statutory damages to award makes the issue inappropriate for disposition on summary judgment. As one Court has explained in a similar case,

> Section 1692k "is multifaceted and open-ended, granting the factfinder considerable discretion to set statutory damages." *Gillespie v. Blitt & Gaines, P.C.*, 123 F. Supp. 3d 1029, 1033-34 (N.D. Ill. 2015). "When there is a material dispute of fact to be resolved *or discretion to be exercised* in selecting a financial award, then either side is entitled to a jury." *BMG Music v. Gonzalez,* 430 F.3d 888, 892 (7th Cir. 2005) (emphasis added). By contrast, only "if there is no material dispute *and* a rule of law eliminates discretion in selecting the remedy, then summary judgment is permissible." *Id.* at 892-93 (emphasis added). Because "[s]ection 1692k(b) channels, but does not eliminate in any circumstance, the jury's discretion to award statutory damages" the Court affirms that "summary judgment is not appropriate for statutory damages." *Gillespie*, 123 F. Supp. 3d at 1034.

*Mitchell*, 2017 WL 4303804, at *9.  The Court agrees with that reasoning.  The amount of statutory damages should be determined by a jury after a trial.  Even if the Court were inclined to decide the issue in the present procedural posture, the issue is insufficiently briefed at the present time.  (*See* Defs.' Resp. Br. at 11 n.8, ECF No. 258.)

The Court denies both parties' motions for summary judgment on the issue of statutory damages.  That issue will be tried by a jury.

## C. Causation Of Actual Damages

Defendants argue that the Court may not award actual damages based on the bare fact that some class members made payments after receiving misleading dunning letters; to receive such damages, according to defendants, these class members must show that the deceptive letters actually caused them to make these payments, which they have not done. Plaintiff argues that the Court should award actual damages to class members in the amount of any payments they made to defendants after receiving a dunning letter offering to "settle."

Under § 1692k, plaintiff and the class members must prove that the actual damages they seek were "sustained . . . as a result" of defendants' "fail[ure] to comply" with the FDCPA. *See McMahon II*, 807 F.3d at 876 ("[A] plaintiff must prove causation to establish actual damages.") (citing *Crabill v. Trans Union, LLC*, 259 F.3d 662, 664 (7th Cir. 2001) ("Without a causal relation between the violation of the statute and the . . . harm, a plaintiff cannot obtain an award of 'actual damages' [under the Fair Credit Reporting Act]."); *Thomas v. Law Firm of Simpson & Cybak*, 244 F. App'x 741, 743 (7th Cir. 2007) ("[O]nly losses flowing from an FDCPA violation are recoverable as actual damages.") (citing *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 404 (6th Cir. 1998) (evidence must "link" harm plaintiff suffered to "those parts of [debt collector's] efforts which he challenged as unlawful"). If, for example, a class member makes a payment after receiving a debt collection letter but does not actually read the letter before making the payment, he cannot properly obtain actual damages based on any violation of the FDCPA that the letter may have contained. *See Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997).

Plaintiff argues that the class members are not required to individually prove causation to obtain actual damages. But the cases plaintiff cites do not support this conclusion. Plaintiff relies principally on *Vasquez v. Superior Court*, 484 P.2d 964, 972-73 (Cal. 1971) ("It is

sufficient for our present purposes to hold that if the trial court finds material misrepresentations were made to the class members, at least an inference of reliance would arise as to the entire class. Defendants may, of course, introduce evidence in rebuttal."), and cites several cases relying on it or citing it. *Vazquez* merely held that the allegations of the complaint's state-law fraud claim were sufficient to warrant class treatment because individual testimony was not necessary for each class member to make out the reliance element of his *prima facie* case. The court specifically stated that "ultimately each class member will be required in some manner to establish his individual damages." *Id.* at 973. *Vazquez* does not support the contention that class members are entitled, without additional proof of causation, to damages of the amounts they paid after receiving defendants' dunning letters.

Plaintiff also argues that, "in cases involving a material omission, it is only necessary to establish that the facts withheld are material in the sense that a reasonable person might have considered them important in the making of his decision." (Pl.'s Resp. Br. at 13, ECF No. 255.) Even if plaintiff is correct to characterize this case as fundamentally about an omission, the cases he cites for this proposition do not support applying it to this case. Some of these cases rely on *Vazquez*, which, as the Court has explained above, is inapposite. Others concern securities fraud under section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5, but these cases do not address damages in any relevant fashion, and plaintiff does not explain how they map on to 15 U.S.C. § 1692k.

The Court agrees with plaintiff that the amount class members paid as a result of receiving deceptive dunning letters is at least a permissible measure of damages under the FDCPA, and it may well be a proper measure of damages in this case. *See Alonso v. Blackstone*

*Fin. Grp. LLC*, 962 F. Supp. 2d 1188, 1197-98 (E.D. Cal. 2013); *Abby v. Paige*, No. 10-23589-CIV, 2013 WL 141145, at *9 (S.D. Fla. Jan. 11, 2013); *Hamid v. Stock & Grimes, LLP*, 876 F. Supp. 2d 500, 503 (E.D. Pa. 2012); *but see Moritz v. Daniel N. Gordon, P.C.*, 895 F. Supp. 2d 1097, 1116-17 (W.D. Wash. 2012) (amount paid on an underlying debt is not a proper measure of damages for violation of state consumer protection law committed by debt collector because, regardless of the violation, "the debt was valid"); *see also Holloway v. Pekay*, No. 94 C 3418, 1996 WL 19580, at *2 (N.D. Ill. Jan. 18, 1996) (attorney's fees incurred in underlying collection action not a proper measure of damages for FDCPA violation of filing the action in an improper venue because "[t]here is no evidence that the attorney's fees and costs *themselves* were improper" merely because the collection action was filed in the wrong courthouse).  But particularly in light of the Seventh Circuit's remarks in *Bartlett*, 128 F.3d at 499, it does not follow that the class members need not bother proving that defendants' failure to comply with the FDCPA caused them to make payments under 15 U.S.C. § 1692k.  *See Gillespie v. Blitt & Gaines, P.C.*, 123 F. Supp. 3d 1029, 1032-33 (N.D. Ill. 2015).  Accordingly, the Court concludes that it is not appropriate at this time to grant summary judgment on the issue of damages.

## III.    WHETHER LVNV IS A DEBT COLLECTOR

During the pendency of these cross-motions, the United States Supreme Court decided *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017).  In that case, the Supreme Court held that a company that attempts to collect debt that the company itself owns does not fit the FDCPA's definition of a "debt collector" as one who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be *owed or due another*," 15 U.S.C. § 1692a(6) (emphasis added).  *See Henson*, 137 S. Ct. at 1720-21, 1726.  Defendant LVNV purchases defaulted debt from lenders or other debt buyers and then refers it to other

entities for collection. LVNV argues that, under the Supreme Court's decision in *Henson*, it is patently not a "debt collector" because it does not collect debt that is "owed . . . another."[4] Rather, LVNV owns debt, which it contracts with other entities to collect.

Plaintiff argues that *Henson* does not apply because LVNV is a debt collector under a different portion of the statutory definition. The full definition (apart from some exceptions not pertinent here) reads as follows:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, ***or*** who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6) (emphasis added). Thus, a debt collector may be *either* (1) one whose "principal purpose" is the collection of debts, *or* (2) one who "regularly collects . . . debts owed . . . another." In *Henson*, the Supreme Court addressed only whether the alleged debt collector met the second prong of the definition; it explicitly did not address the first prong. *See Henson*, 137 S. Ct. at 1721. *Henson* establishes that LVNV is not a debt collector under the scond prong, but according to plaintiff, LVNV is a debt collector under the first prong because the principal purpose of its business is debt collection. Defendant replies that there is insufficient evidence to support any such conclusion.

Another court has already considered this very issue, in a similar case and an identical posture, and concluded that there was a genuine issue of material fact as to whether LVNV is a debt collector under the "principal purpose" definition. In *Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 WL 6406594, at *2-7 (N.D. Ind. Dec. 15, 2017), the court explained that it was undisputed that LVNV "purchases and holds ownership in distressed receivables," it

---

[4] In their response brief, defendants did not otherwise respond to plaintiff's argument that all defendants are debt collectors who are liable, at least vicariously, for the misleading dunning letters plaintiff and the class members received, so the Court presumes that defendants other than LVNV do not contest that they are liable to the extent that the letters are misleading.

has no employees, and pursuant to a written agreement and with written power of attorney, Resurgent directs its collection activities. *Id.* at *4. LVNV did not dispute that it was the named plaintiff in numerous collection actions in the Circuit Court of Cook County.[5] *Id.* Further, the plaintiff put forth evidence that LVNV had described the general character of its business as "consumer debt collection" in an Application for Registration filed in Massachusetts, and that a Massachusetts state court had determined that "'at least 99 percent of LVNV's gross revenue has been derived from collecting on unpaid consumer debts [owned] by it.'" *Id.* at *6 (quoting *Dorrian v. LVNV Funding, LLC*, No. SUCV142684BLS2, 2017 WL 2218773 (Mass. Super. Ct. Mar. 30 2017)). Additionally, the Court noted that LVNV had nowhere in the record or the briefing "articulated that it has any other business purpose [apart from debt collection], nor [had] it shown that it has the broad variety of business activity of a consumer finance company like Santander, the entity sued in *Henson*," which was "evidence that the jury is entitled to weigh when determining if the evidence, and resulting inferences, put forth by the Plaintiff regarding LVNV's collection activities are sufficient to establish that LVNV's principal purpose is debt collection." *Mitchell*, 2017 WL 2218773, at *7. There is similar evidence in this case, and the Court agrees with the *Mitchell* court's conclusion.

Defendants urge this Court to follow several district court decisions that have held that, even under the "principal purpose" prong of the definition, a debt owner must itself engage in some collection activity or have some interaction with debtors as part of its business in order to meet the definition of "debt collector." *See, e.g., McAdory v. M.N.S & Assocs., LLC*, No. 3:17-CV-00777-HZ, 2017 WL 5071263, at *3 (D. Or. Nov. 3, 2017); *Gold v. Midland Credit Mgmt., Inc.*, 82 F. Supp. 3d 1064, 1070-71 (N.D. Cal. 2015) *Kasalo v. Trident Asset Mgmt.*, LLC, 53 F.

---

[5] In this case, defendants object to the list of lawsuits plaintiff has submitted as "unauthenticated," but do not deny the substance of the fact. (Defs.' Resp. to Pl.'s LR 56.1 Stmt. ¶ 17.)

Supp. 3d 1072, 1078-79 (N.D. Ill. 2014). The Court is skeptical of the reasoning of these decisions, which are insufficiently attentive to the fact that the definition of "debt collector" in 15 U.S.C. § 1692a(6) has two distinct prongs. *See Henson*, 137 S.Ct. at 1721 (referring to "alternative definition[s]" of § 1692a(6)), *id.* at 1723 (referring specifically to "the definition at issue before us" in its reasoning); *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1313-14, 1313 n.3 (11th Cir. 2015) (citing *Brown v. Budget Rent-A-Car Sys., Inc.*, 119 F.3d 922, 924 (11th Cir. 1997) ("As a general rule, the use of a disjunctive in a statute indicates alternatives and requires that those alternatives be treated separately.") (internal quotation marks omitted)). Even if the second prong may require interaction with debtors, the plain language of the first prong does not. It simply states that a debt collector is any person engaged in a business "the principal purpose of which is the collection of any debts." If, for example, all or an overwhelming majority of a business's revenue is derived from acquiring distressed debt and collecting it, then surely that business's "principal purpose" is "the collection of any debts." *See Tepper v. Amos Fin., LLC*, No. 15-CV-5834, 2017 WL 3446886, at *8 (E.D. Pa. Aug. 11, 2017) ("While the second definition is limited to "debts owed . . . another," the first definition applies to "*any* debts," provided only that the entity's *principal purpose* is the collection of such debt. We agree with Plaintiff that the evidence shows that Defendant meets that first definition. Indeed, any other conclusion is untenable in light of Mr. Korogluyan's testimony that Defendant's business focuses exclusively on acquiring and servicing non-performing and semi-performing loans."). The Court fails to see why it should matter if the debt buyer hires a third party to actually collect its debt, *i.e.*, to be the one who interacts with the debtor to obtain payment. If the collection of debts is precisely what sustains the business, unaided by any other

significant sources of revenue, then the "collection of . . . debts" must be the business's "primary purpose."

But for purposes of the present motion, the Court need not decide whether an entity can be a "debt collector" under the "primary purpose" prong of the definition without interacting with consumers. As in *Mitchell*, in this case plaintiff has adduced evidence that LVNV interacts with consumers by filing collection lawsuits against them. *See Mitchell*, 2017 WL 6406594, at *6 (distinguishing *McAdory*, *Gold*, and *Kasalo* on this basis). (*See* Pl.'s Opp'n to Defs.' Mot. to Submit Add'l Authority, Ex. B, ECF No. 273-2.)

The evidence does not conclusively establish that the principal purpose of LVNV's business is debt collection—and unlike a jury, this Court may not "'sift through the evidence and decide whom to believe'" at the summary judgment stage. *Mitchell*, 2017 WL 6406594, at *6 (quoting *Waldridge*, 24 F.3d at 920). But viewing all the evidence in the light most favorable to plaintiff and drawing all reasonable inferences in his favor, a reasonable juror could reach a verdict in favor of plaintiff on the question of whether the principal purpose of LVNV's business is debt collection. The parties' motions for summary judgment are denied on the issue of whether LVNV is a debt collector. *See Mitchell*, 2017 WL 6406594, at * 6-7.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part plaintiff's motion for summary judgment [229]. The motion is granted as to whether defendants' dunning letters were deceptive and misleading in violation of the FDCPA; it is otherwise denied. Defendants' cross-motion for summary judgment [235] is denied. Plaintiff's motion to strike [256] is denied. Defendants' *Daubert* motion [226] is granted. The Court sets a status hearing for April 11, 2018

at 9:30 a.m. to discuss further proceedings to resolve the questions of damages and whether LVNV is a "debt collector" under the FDCPA.


**SO ORDERED.**                              **ENTERED: 3/14/18**


_____

**HON. JORGE ALONSO**
**United States District Judge**